ÁUREO AVELLANET, demandante y apelado *v.* PORTO RICAN EXPRESS Co., demandada y apelante.

Núm. 8923.—*Sometido:* Diciembre 7, 1944. *Resuelto:* Marzo 16, 1945.

*Hartzell, Kelley & Hartzell, Rafael O. Fernández y A. Ramírez Silva*, abogados de la apelante; *Pascasio Fajardo Martínez y Rafael A. Saliva*, abogados del apelado.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

En 1942 Áureo Avellanet radicó una querella contra la Porto Rican Express Co. en reclamación de $2,602.36 por salarios devengados y no pagados de conformidad con la Ley núm. 49, Leyes de Puerto Rico, 1935 ((2) pág. 539). La querella comprendía servicios prestados desde 1935 a 1938. En ella se alega que desde el 1935 al 1936 el querellante percibía un sueldo regular de $35 mensuales; que desde 1936 al 24 de octubre de 1938 percibía un sueldo regular de $44 mensuales; que dicho sueldo debe considerarse como el pago de un día de trabajo de ocho horas; y que el querellante trabajó diariamente cinco horas extras, por lo que tenía derecho, de acuerdo con la Ley núm. 49, a que se le pagara el doble de lo que como sueldo regular venía pagándosele.

La corte municipal resolvió el caso a favor del querellante, y la demandada apeló para ante la corte de distrito. Dicha corte también resolvió el caso a favor del querellante, pero modificó la sentencia disponiendo que se pagara al tipo doble la novena hora y al tipo sencillo las restantes cuatro horas. El caso se encuentra ante nos al apelar la demandada la sentencia por $1,274, costas y $200 para honorarios de abogado.

I

En el primer error señalado alega la demandada que este pleito, radicado en 1942 por trabajo extra que se alega se debe de acuerdo con la Ley insular núm. 49, realizado desde 1935 a 1938, está prescrito a tenor con el artículo 1868 de nuestro Código Civil que establece la prescripción de un año.([1]) En apoyo de esta teoría, la demandada cita

(1) Esta sección provee que: "Prescriben por el transcurso de un año:

"1.       *       *       *       *       *       *       *

"2. La acción para exigir la responsabilidad civil por injuria o calumnia,

en primer término la Enciclopedia Jurídica Española (Apéndice 1926), pág. 448, al efecto de que la prescripción de un año equivalente en el Código Español se aplica a ciertas clases de reclamaciones de salarios ante los Tribunales Industriales de España. La demandada también cita el caso de *Divine* v. *Levy,* 45 F. Supp. 49 (District Court, La. 1942), que resolvió que el término prescriptivo de un año de Louisiana que se encuentra en el artículo 3536 del Código de Louisiana por daños "provenientes de ofensas o cuasi ofensas" se aplica a una reclamación de daños líquidos bajo la Ley sobre Normas Razonables del Trabajo. Este caso y los similares son importantes para la administración de la Ley Federal, toda vez que el término prescriptivo en tales casos se determina de acuerdo con las disposiciones de las leyes estatales. Muchos estados tienen períodos prescriptivos diferentes para la reclamación de derechos que surgen de daños, contratos, ofensas o leyes estatales o Federales. Ha surgido considerable controversia en cuanto a la clasificación bajo tales leyes estatales de los daños líquidos de acuerdo con la Ley sobre Normas Razonables del Trabajo. Algunas cortes han llegado a la misma conclusión restrictiva que la Corte de Distrito Federal de Louisiana. Otras han sido más liberales,[2] incluyendo la Corte de Distrito de los Estados Unidos para Puerto Rico, que ha resuelto que el artículo 1868 de nuestro Código no es de aplicación a un pleito de daños líquidos de acuerdo con la Ley sobre Normas Razonables del Trabajo. (*Pedro Pastrana et al.* v. *P. R. Coal Co.,* civil número 3806, resuelto el 25 de agosto de 1944; *Manuel Martínez* v. *Bull Insular Line Inc.,* civil número 3803, resuelto el 19 de febrero de 1944). Pero las autoridades españolas y Federales, si bien informativas, no predominan aquí. Este caso es por trabajo extra realizado de acuerdo con disposiciones específicas de nuestra propia ley,

---

y por las obligaciones derivadas de la culpa o negligencia de que se trata en el artículo 1802 desde que lo supo el agraviado."

[2]*Cf. Keen* v. *Mid-Continent Petroleum, infra,* escolio 20.

la núm. 49, y no bajo una ley española o bajo la Ley sobre Normas Razonables del Trabajo. La naturaleza del derecho creado por la Ley núm. 49—que a su vez señalará el período prescriptivo aplicable a él—es puramente una cuestión de ley local. Por tanto nos remitimos a la Ley núm. 49 con el propósito de examinarla.

La Ley núm. 49 dispone un día de trabajo de ocho horas. Permite que se trabaje la novena hora, pero exige que se pague tiempo doble por la misma. Hemos resuelto que el trabajar después de la novena hora, si bien prohibido so pena de penalidad criminal, debe pagarse a tiempo sencillo. Pero la regla ha sido establecida claramente al efecto de que de adeudarse algo como tiempo sencillo después de la octava hora, depende del contrato de servicios; es decir, una persona que bajo un convenio privado entre las partes trabaje diariamente trece horas por un sueldo estipulado por día, por semana o por meses, ha recibido pago total bajo la Ley número 49—que no es una ley de salario mínimo—excepción hecha de la paga adicional por la novena hora, la cual, bajo tales circunstancias, se paga a un tipo por hora calculado dividiendo la cantidad recibida por el número total de horas trabajadas para ganarla. *Cardona* v. *Corte,* 62 D.P.R. 61; *Muñoz Colón* v. *Corte,* 63 D.P.R. 236.

Por tanto es evidente que una reclamación por trabajo realizado después de la novena hora por lo menos está basada en contrato. En su consecuencia, la contención de la demandada de que el presente caso es uno de daños o para hacer efectiva una penalidad y por ende está impedido (*barred*) a tenor con el artículo 1868 de nuestro Código Civil, debe ser rechazada en cuanto a dicha parte de la reclamación del querellante.

El querellante insiste que en el caso de *Cardona* caracterizamos la paga doble por la novena hora como una penalidad.(³) Pero un examen cuidadoso del caso de *Cardona*

---

(³)Asumimos, sin decidirlo, que el artículo 1868 se aplica a un pleito para hacer efectiva una penalidad.

revela que equiparamos la paga doble por la novena hora a una penalidad únicamente para el limitado propósito de cumplir con el requisito de que la responsabilidad proveniente de penalidades debe ser expresamente impuesta por la Ley. Por el contrario, dijimos que (pág. 76) "Ciertamente no es una penalidad en el sentido tradicional de castigo por una ofensa contra el Estado", y la comparamos con los daños líquidos bajo la Ley sobre Normas Razonables del Trabajo respecto de los cuales la Corte Suprema de los Estados Unidos en el caso de *Overnight Motor Co.* v. *Missel,* 316 U.S. 572, 583, ha dicho que "son compensación, no una penalidad o castigo de parte del Gobierno." La Ley Insular número 49 no tiene disposición alguna para daños líquidos en caso de que no se pague a tiempo doble la novena hora; sólo dispone que se pague la novena hora a tiempo doble. De no ser una penalidad los daños líquidos, *a fortiori* no podría así caracterizarse la paga estatutaria por tiempo extra, por lo menos a los fines de invocar el período prescriptivo que se encuentra en el artículo 1868 del Código Civil. Nuestro razonamiento aquí es, por tanto, consistente con el de algunas Cortes Federales, incluyendo la Corte de Distrito de los Estados Unidos para Puerto Rico, al negarse a aplicar el artículo 1868 y estatutos similares de prescripción a las reclamaciones por daños líquidos bajo la Ley sobre Normas Razonables del Trabajo.

La demandada también descansa en la prescripción de tres años que se encuentra en el artículo 1867 de nuestro Código.(4) En 1927 Avellanet empezó a trabajar con la

(4) Dicho artículo dispone que "Por el transcurso de tres años prescriben . . . las obligaciones siguientes:

"1.    *    *    *    *    *    *    *

"2.    *    *    *    *    *    *    *

"3. La de pagar a los mensuales, criados y jornaleros el importe de sus servicios, . . . .

"4.    *    *    *    *    *    *    *

"El tiempo para la prescripción de las acciones a que se refieren los tres párrafos anteriores se contará desde que dejaron de prestarse los respectivos servicios."

demandada como oficinista. Declaró que desde 1927 hasta octubre 24 de 1938 estuvo empleado exclusivamente en relación con el recibo y despacho de carga local. Luego, según declaró, trabajó en otra carga, presumiblemente del comercio interestatal. Debido a estos hechos, afirma la demandada que la "naturaleza de los servicios" prestados por el querellante cambió en octubre de 1938; que a tenor con la doctrina establecida en *Muñoz Colón* v. *Corte,* supra, esto tuvo el efecto de terminar el contrato anterior de servicio; que como consecuencia, el período prescriptivo de tres años provisto en el artículo 1867 para tales casos empezó a correr en octubre de 1938 en cuanto a todos los servicios prestados antes de dicha fecha; y que el presente caso, radicado en 1942, estaba por tanto impedido (*barred*).

No podemos convenir con esta contención. Para poder aplicarse esta doctrina, nos parece que por lo menos debe haber un cambio efectivo en la clase de trabajo realizado por el empleado. Aquí continúa haciendo exactamente el mismo trabajo que siempre había hecho: el trabajo de oficina necesario para recibir y despachar carga en una oficina local de una compañía de porteo. El querellante o su abogado aparentemente creyeron que había que relacionar su trabajo en el transporte interestatal para asegurar el cobro de acuerdo con la Ley sobre Normas Razonables del Trabajo en los casos que, como veremos, radicó por trabajo realizado después de octubre de 1938. Pero asumiendo que su testimonio a este respecto fuese cierto, no podemos ver de qué manera el origen o el destino de la carga que él despachaba hacía que sus servicios como tal oficinista fueran diferentes. Nada hay en el récord que demuestre (*a*) bien que el trabajo de un oficinista en carga interestatal es diferente a las mismas funciones realizadas en carga local, o (*b*) que las partes por sí mismas—sin hacer referencia a la nueva Ley Federal—llegaron a un nuevo convenio contractual. Por tanto no podemos resolver que los servicios del querellante fueron

de naturaleza diferente después de 1938.([5]) La corte inferior no cometió error al rechazar la defensa especial de prescripción.

## II

La apelante invoca seguidamente la defensa de *res judicata*. En apoyo de la misma, presentó en evidencia en la corte inferior copias certificadas de una resolución y una sentencia de la Corte de Distrito de los Estados Unidos para Puerto Rico, acreditativas de que Avellanet formaba parte de un grupo de querellantes que radicaron conjuntamente dos querellas ante dicha corte contra la demandada, por salarios devengados y no pagados de acuerdo con la Ley sobre Normas Razonables del Trabajo, por trabajo realizado desde 1938 a la fecha de las querellas, y de que Avellanet estuvo conforme con una resolución dictada en 1940 desestimando el primer caso, "la que tendrá el efecto de *res judicata* a todos los fines legales," después de habérsele pagado $303.86 como saldo total del pleito; y que se le pagó $300 en pago total de una sentencia dictada por consentimiento en 1942 en el segundo caso a favor del querellante y contra la demandada.([6]) Por tanto la demandada alega que el haber cobrado en 1940 y 1942 por los servicios rendidos desde 1938 y 1941 impide (*bars*) un pleito posterior en cobro de los servicios anteriores desde 1935 a 1938 en el mismo empleo.

Uno de los más importantes aspectos de la ley de *res judicata* es que un litigante no puede fraccionar su causa de acción. Si un querellante tiene una reclamación, en el pleito que radica, debe exponerla íntegramente y no parte de la misma. De no hacerlo así, no puede permitírsele luego que

([5]) Escasamente tenemos que añadir que la cuestión de si la diferencia en la clase de carga que el querellante recibía y despachaba surtió algún efecto en cuanto a si la Ley Federal cubría o no su empleo, no está ante nos y no emitimos comentarios sobre la misma.

([6]) El total pagado a todos los querellantes fué $6,208.79 en el primer caso y $4,900 en el segundo.

radique una nueva querella por el remanente de la misma reclamación o causa de acción. Recientemente reiteramos esta doctrina en *Pueblo* v. *Lugo Irizarry,* ante pág. 554, donde dijimos que una causa de acción se funde en la sentencia dictada, y tal sentencia es concluyente—siempre y cuando que estén envueltas las mismas partes y la misma causa de acción—en cuanto a todos los puntos que pudieron haber sido, pero que no fueron, de hecho litigados y determinados.[7]

Comentando la sección 62 el *Restatement, Judgments,* dice que "Cuando una parte en un contrato indivisible ha dejado de cumplir dicho contrato dos o más veces, y la otra parte entabla una acción en su contra por uno o más de los incumplimientos, la sentencia, ya sea a favor del demandante o del demandado, impide al demandante el instituir luego una acción por cualquier incumplimiento del contrato llevado a cabo por el demandado antes de iniciarse la acción. *Todos los incumplimientos del contrato con anterioridad al inicio del pleito son considerados como una sola causa de acción.*" (Bastardillas nuestras).[8]

Nadie disputa la existencia de esta doctrina o su aplicación a incumplimientos de contratos de servicios. Por tanto se admite en efecto que si hubo un pleito ante la Corte Federal por un *contrato* de servicios en 1942, el cobro en dicho pleito de los jornales contractuales para 1938–41 impediría *(bar)* un pleito posterior ante una corte insular por los jornales convenidos para 1935–38. Claramente serán

---

[7] A este efecto véanse también *Sucesión Rivera* v. *Lugo,* 63 D.P.R. 14; *Laloma* v. *Fernández,* 61 D.P.R. 569; *Encarnación* v. *Maeso,* 48 D.P.R. 480; *Cromwell* v. *County of Sac.* 94 U.S. 351, 352; *Méndez* v. *Bowie,* 118 F. (2) 435, 441, (C.C.A. 1st. 1941); *Restatement, Judgments,* secciones 47, 62.

[8] *Moore* v. *Illinois Cent. R. Co.,* 136 F. (2d) 412 (C.C.A. 5th., 1943); *Dern* v. *Tanner,* 96 F. (2d) 401 (C.C.A. 9th, 1938); *Turner* v. *Gladys Belle Oil Co.,* 36 F. (2d) 671 (C.C.A. 5th, 1930); *Arnold* v. *Masonic Country Club,* 256 N.W. 472 (Mich., 1934). Véase *Baird* v. *United States,* 96 U.S. 430; 5 Williston *on Contracts,* Rev. ed., sección 1292. *Cf. Baltimore S.S. Co.* v. *Phillips,* 274 U.S. 316, 319; *United States* v. *Moser,* 266 U.S. 236, 241; 64 A.L.R. 663; 127 A.L.R. 1081.

partes de la misma causa de acción, y no podrán fraccionarse en dos pleitos.

Pero cuando nos remitimos al presente caso encontramos un problema un tanto más difícil. ¿Eran las reclamaciones de 1938–41 bajo la ley Federal y de 1935–38 bajo la ley insular partes de la misma causa de acción? La dificultad aquí estriba en que la causa o causas de acción no surgieron solamente del contrato de las partes. Más bien, fueron creadas por Leyes de la Legislatura Insular y del Congreso. Es cierto que debe existir el hecho relacionado con el empleo para que puedan tener aplicación los estatutos. Pero del contrato y su ejecución, por sí solos no surge derecho alguno. Los derechos fueron creados por el impacto de las dos leyes Insular y Federal en los hechos relacionados con el empleo. El querellante cobró en 1940 y en 1942, en los pleitos radicados, junto a otros empleados de la demandada, ante la Corte Federal por salarios devengados y no pagados a tenor con la Ley sobre Normas Razonables del Trabajo. No sólo emanó de la Ley Federal el derecho a percibir tales jornales y no únicamente del contrato de empleo, si que también la Corte Federal tenía jurisdicción sobre los pleitos sólo debido a las disposiciones expresas de dicha ley que permite que los pleitos, independientemente de la cantidad envuelta, sean radicados ante las Cortes de Distrito de los Estados Unidos, y que permite que un número de obreros se unan en el mismo pleito como querellantes (Título 29 U.S.C.A. sec 216 (b).([9]) Los derechos del querellante bajo la Ley Insular número 49 emanan de una fuente legislativa diferente, y son diferentes

---

([9]) El Título 28 U.S.C.A. sección 41 (8) dispone que el requisito de $3,000 no se aplicará a "pleitos y procedimientos surgentes de una ley de los Estados Unidos regulando el comercio." Y un pleito bajo la Ley sobre Normas Razonables del Trabajo es un pleito que surge de una ley de los Estados Unidos regulando el comercio (*Robertson* v. *Argus Hosiery Mills*, 121 F. (2d) 285 (C.C.A. 6th, 1941).)

Véase Rahl, *The Class Action Device and Employee Suits Under the Fair Labor Standards Act*, 37 Ill. L. Rev. 119; Crockett, *Jurisdiction of Employee Suits under the Fair Labor Standards Act*, 39 Mich. L. Rev. 419.

en naturaleza en cuanto al único punto aquí envuelto, paga extra.([10]) ¿Puede decirse, no obstante, que el derecho a la paga extra en virtud de la Ley Insular número 49 era parte de la *misma causa de acción* sobre la cual ya se había dictado sentencia por la Corte Federal de conformidad con la Ley Federal para paga ordinaria y extra de acuerdo con la Ley sobre Normas Razonables del Trabajo, por razón de que los mismos hechos provenientes del empleo estén envueltos, tanto bajo el estatuto insular como el Federal? De ser contestada dicha pregunta en la afirmativa, en verdad se torna formidable la contención de que el querellante ha violado la regla contra el fraccionamiento de la causa de acción.

Confrontamos con trepidación el torbellino creado por las cortes al tratar de definir lo que es una causa de acción.([11]) "El uso de dicho término en situaciones genéricas resulta inexacto cuando se hace necesario aplicarlo a casos específicos".([12]) En verdad, la Corte Suprema nos ha advertido, que "Una 'causa de acción' puede significar una cosa para cierto propósito y algo diferente para otro."([13]) Con dicha advertencia en mente, pasemos a la cuestión precisa envuelta en el presente caso, que es la siguiente: ¿Opera la creación

---

([10]) La Ley número 49 dispone la paga doble solamente por la novena hora después de un día de trabajo de ocho horas. *Cardona* v. *Corte,* supra. La Ley sobre Normas Razonables del Trabajo dispone el pago de tiempo y medio después de 40 horas semanales (Título 29 U.S.C.A. sec. 207). Es obvio que bajo diferentes situaciones de hecho se devenga jornal extra bajo una ley pero no bajo la otra. Además, el estatuto Federal, pero no el insular, provee una cantidad igual de daños líquidos por dejarse de pagar el jornal extra de conformidad con la misma (Título 29 U.S.C.A. sec. 216).

([11]) Ha sido una prolífica fuente de controversia la determinación de lo que es la misma causa de acción a los fines de *res judicata.* Scott, *Collateral Estoppel by Judgment,* 56 Harv. L. Rev. 1, 22–26; *Restatement, Judgments, Title D, What Constitutes the Same Cause of Action,* pág. 239; *Cf.* Anotaciones en 64 A.L.R. 663, 127 A.L.R. 1081, en el campo de la ley de daños. Véase *State Farm Mutual Automobile Insurance Co.* v. *Duel,* 324 U.S. 154, resuelto el 12 de febrero de 1945.

([12]) Si bien este lenguaje se empleó en *Davis Warehouse Co.* v. *Bowles,* 321 U. S. 144, 147, sobre un problema diferente, es de aplicación aquí con igual fuerza.

([13]) *United States* v. *Memphis Cotton Oil Co.,* 288 U.S. 62, 67–8; véase también *Gully* v. *First Nat. Bank,* 299 U.S. 109, 117.

de un derecho por la ley Federal a base de ciertos hechos, de tal manera que todos los otros derechos no Federales provenientes de los mismos hechos bajo la ley estatal, sean parte de la misma causa de acción creada por el estatuto Federal? En nuestra búsqueda los casos que más se asemejan a esta cuestión, surgen en el campo de las patentes y de las marcas de fábrica.([14]) Si una persona tiene una marca de fábrica debidamente registrada bajo la Ley Federal de Marcas de Fábrica, las cortes Federales expresamente tienen jurisdicción sobre los pleitos que aleguen violación de la misma. Por otro lado, si no se trata de una marca de fábrica debidamente registrada bajo el estatuto Federal, el único remedio es un pleito por competencia desleal bajo el derecho común. Pero los "hechos que dan lugar a un pleito por violación de la Ley Federal y a otro por competencia desleal son sustancialmente los mismos. Ellos constituyen y hacen patente el acto ilegal de que uno se queja, la violación del derecho a uso exclusivo." *Armstrong Co.* v. *Nu-Enamel Corp.*, 305 U.S. 315. La Corte Suprema concluye por tanto, en el caso de *Nu-Enamel Corp.*, que sólo está envuelta una causa de acción en el derecho Federal de marcas de fábrica y en el derecho no Federal de competencia desleal. En su consecuencia, la Corte resolvió que (pág. 324) "A menos que sea patentemente insustancial, la alegación del registro de acuerdo con la ley es suficiente para conferir jurisdicción en

([14])El abogado del querellante no cita ningún caso sobre la cuestión de *res judicata*. Los de la demandada se limitan a citar el caso de *Laloma* v. *Fernández*, 61 D.P.R. 569. Pero dicho caso sólo sostiene el obvio principio de que las mismas partes pueden litigar la misma causa de acción una sola vez. Y la verdadera cuestión aquí es si la reclamación de 1935-38 es parte de la misma causa de acción que la reclamación de 1938-42. Nos damos cuenta que nuestra decisión en este caso necesariamente tiene que basarse en la contestación a una complicada cuestión de jurisdicción Federal, un campo casi esotérico en el que ni profesamos ni poseemos la pericia que puede obtenerse, o aun aproximarse, solamente mediante el diario cumplimiento de los deberes de un juez Federal, y no por nuestra actuación esporádica en dicha capacidad (Título 48 U.S.C.A. sec. 863). Sin embargo, no vemos de qué manera podemos evadir el problema en este caso.

los méritos." Y una resolución al efecto de que la marca de fábrica era inválida, no priva por ello a la corte de jurisdicción en cuanto a la competencia desleal. Por el contrario, (pág. 324-5) "Una vez obtenida debidamente, la jurisdicción sobre una causa de acción—la alegada violación de la marca de fábrica—subsiste para que se puedan considerar todos los fundamentos que la sostienen, incluyendo la competencia desleal con el producto de que se trata."(15)

La corte continúa diciendo, a la pág. 325, que el caso de Hurn v. Oursler, 289 U.S. 238, el principal sobre esta materia, "resolvió que cuando son diferentes las causas de acción, la determinación de que la causa Federal no procede obligaría a desestimar todo el caso. Pero cuando sólo hay una causa de acción, no consideramos que la resolución en

(15)Cf. la doctrina relacionada de que "cuando existe jurisdicción federal debido a que está envuelta una cuestión Federal, la corte puede adjudicar todas las cuestiones envueltas en el caso, ya sean Federales o no, aún cuando decida la cuestión federal contra el querellante o no llegue a decidirla. Generalmente se dice que la cuestión Federal debe ser sustancial." *Scope of Federal Jurisdiction Obtained through Existence of a Federal Question,* 40 Harv. L. Rev. 298; *Water Service Co.* v. *Redding,* 304 U.S. 252; *Siler* v. *Louisville & Nashville R. R. Co.,* 213 U.S. 175; *Levering & Garrigues Co.* v. *Morrin,* 61 F. (2d) 115, 119, 120 (C.C.A. 2d, 1932); *Municipality of Río Piedras* v. *Serra, Garabís & Co.,* 65 F. (2d) 691, 701 (C.C.A. 1st, 1932).

Para nuestros fines en Puerto Rico, también es importante indicar que se ha rechazado la contención de que todos los pleitos en todas las cortes en Puerto Rico envuelven cuestiones Federales porque la autoridad para mantener tales pleitos emana, en análisis final, de una ley del Congreso, el Acta Orgánica. La Corte Suprema dijo en *Puerto Rico* v. *Russell & Co.,* 288 U.S. 476, 483: ". . . Creemos que aun cuando el peticionario derivó su autoridad para mantener el pleito de la Ley del Congreso, no surgió ésta bajo las leyes de los Estados Unidos dentro del significado de los estatutos jurisdiccionales.

"El pleito se trajo en cobro de contribuciones impuestas bajo una Ley de la Legislatura de Puerto Rico, pero no para hacer efectivo un derecho creado por una ley de los Estados Unidos. De la faz de la demanda no aparece cuestión alguna de interpretación o de la ejecución de un estatuto Federal. Puede invocarse la jurisdicción Federal para vindicar un derecho o privilegio reclamado bajo un estatuto Federal. No puede invocarse cuando el derecho reclamado no es Federal, meramente porque el derecho del querellante a demandar se deriva de una ley Federal, o porque la propiedad envuelta se obtuvo bajo un estatuto Federal. La naturaleza Federal del derecho a establecerse es decisiva—no la fuente de la autoridad para establecerla. . . ."

Véase también *Gully* v. *First National Bank,* 299 U.S. 109, 114-16.

cuanto a la invalidez proporciona base alguna para distinguir este caso del de *Oursler*. El registro de 'Nu-Enamel' proporcionó un fundamento sustancial para la jurisdicción Federal. Esa jurisdicción debe continuar con el fin de determinar, sustancialmente sobre los mismos hechos, la cuestión de competencia desleal."

El caso de *Oursler* expone este principio de jurisdicción Federal a las págs. 245-6 como sigue: "Pero la doctrina no va tan lejos como para permitirle a una corte Federal asumir jurisdicción de una causa de acción no Federal separada y distinta debido a que se le incluya en la misma demanda con una causa de acción Federal. La distinción a ser observada es entre un caso en que se aleguen dos distintos fundamentos en apoyo de una sola causa de acción, una sola de las cuales presenta una cuestión Federal, y un caso en que se aleguen dos causas de acción separadas y distintas una sola de las cuales es Federal en su carácter. En la primera, cuando la cuestión Federal alegada no carece totalmente de sustancia, la corte Federal, aun cuando no se establezca el fundamento Federal, puede no obstante, retener y resolver el caso sobre el *fundamento* no Federal; en el último no puede hacer esto sobre la *causa de acción* no Federal. . . . La regla aplicable está expuesta, y se citan autoridades, en *Baltimore S. S. Co.* v. *Phillips*, 274 U.S. 316. 'Una causa de acción no consiste de hechos', dijo allí esta Corte (pág. 321), 'sino de la violación ilegal de un derecho demostrado por los hechos. El número y la variedad de los hechos alegados no establece nada más que una causa de acción en tanto en cuanto sus resultados, ya se les considere por separado o conjuntamente, sea la violación de sólo un derecho por un solo acto ilegal. . . "Ellos no constituyen la causa de acción, sino que señalan su existencia trayendo a la luz el acto ilegal" '.

" .   .   .   .   .   .   .   .   .   .   .

"Con lo arriba expuesto no queremos decir que establezcamos una fórmula inflexible para determinar en todos los

casos qué es lo que constituye una causa de acción. 'Una "causa de acción" puede significar una cosa para cierto propósito y algo diferente para otro', *United States* v. *Memphis Oil Co.,* 288 U.S. 62; pero a los fines de determinar los lindes entre la jurisdicción estatal y la Federal, el significado debe quedar dentro de los límites indicados. Compárense *B. & O. S. W. R. Co.* v. *Carroll,* 280 U.S. 491, 494–5, y casos citados".([16])

La cuestión por tanto parece ser si, en el lenguaje de los casos de *Oursler* y *Nu-Enamel,* las respectivas reclamaciones Federal (1938–42) y no Federal (1935–38) por salarios al querellante en este caso son meramente fundamentos diferentes en apoyo de la misma causa de acción, o si de hecho ellos envuelven diferentes derechos que justifiquen la designación de causas de acción separadas. Pero, no importa lo interesante que pueda ser dicho problema, no tenemos que resolverlo en este caso específico. Asumimos, sin decidirlo, que los derechos que resultan de la Ley insular número 49 de los mismos hechos relacionados con el empleo posteriores a 1938 son parte de la misma causa de acción que los derechos resultantes de la Ley sobre Normas Razonables del Trabajo por empleo desde que entró en vigor en octubre de 1938 la Ley Federal.([17]) Pero, haciendo uso una vez más de una analogía suministrada en un caso de marcas de fábrica,

---

([16])· Los problemas levantados por el caso de *Hurn* v. *Oursler* son examinados extensamente en *Jurisdiction in Federal Courts over Non-Federal Claims when Joined with a Federal Question,* 52 Yale L. J. 922; 1 Moore, *Federal Practice,* 155–65, 1944 Suppl. pp. 266–70; Shulman and Jaegerman, *Some Jurisdictional Limitations on Federal Procedure,* 45 Yale L. J. 393; *Scope of Federal Jurisdiction Obtained through Existence of a Federal Question,* 40 Harv. L. Rev. 298; 45 Yale L. J. 1287; 33 Col. L. Rev. 296.

([17]) Por tanto dejamos a un lado tales cuestiones como si las reclamaciones de salarios bajo la Ley número 49 y Ley sobre Normas Razonables del Trabajo están inextricablemente entrelazadas, si la prueba necesaria para establecer la reclamación no Federal es sustancialmente idéntica a aquella necesaria para establecer la reclamación Federal, o si evidencia adicional sustancial, no relevante a la reclamación Federal, es necesaria para la reclamación no Federal. Véanse las iluminadoras opiniones de la mayoría y disidente en *Zalkind* v. *Scheinman,* 139 F. (2d) 895 (C.C.A. 2d, 1943).

*Stark Bros. Co.* v. *Stark,* 255 U.S. 50, encontramos que cualquier derecho no Federal bajo la Ley número 49 por trabajo anterior a 1938 no es parte de una causa de acción que resulta de la Ley sobre Normas Razonables del Trabajo de 1938, aun cuando se trate del mismo empleo.

En el caso de *Stark* se radicó un pleito ante la Corte Federal, tanto por violación de una marca de fábrica, como por el derecho no Federal de competencia desleal proveniente de los mismos hechos.. La Corte Suprema resolvió que la Corte Federal no tenía jurisdicción para conceder daños por la competencia desleal que tuvo efecto antes de que se registrara la marca de fábrica bajo el estatuto Federal. El Juez Holmes, hablando por la Corte, dijo, a las págs. 51–2:

"La violación que se persigue es violación de una marca de fábrica registrada, no la violación de una marca de fábrica. Ese es el significado claro de las palabras arriba dichas y del alcance necesario de este pleito toda vez que ése es el alcance de la jurisdicción de la corte de distrito. *A. Leschen & Sons Rope Co.* v. *Broderick & Bascom Rope Co.,* 201 U. S. 166, 172. Parece ser muy claro que el demandante tenía una causa de acción fuera del estatuto, pero eso había que determinarlo en otro sitio ya que el pleito era entre ciudadanos del mismo Estado. Sólo el estatuto le dió el derecho de recurrir a esta Corte de los Estados Unidos. Al venir a reclamar sus derechos estatutarios, asumiremos a favor del demandante que puede recobrar por competencia desleal que era inseparable del acto ilegal estatutario, pero no puede retrotraerse y recobrar por daños anteriores a los derechos derivados de una fuente diferente."(18)

La situación por tanto puede resumirse así: en ausencia de diversidad de ciudadanía, cuando se radica un pleito en

---

(18) El caso de *Stark* no ha sido revocado por el de *Oursler.* 1 Moore, supra, 1944, pág. 267. *Zalkind* v. *Scheinman,* 139 F. (2d) 900–1, escolio 14, (C.C.A. 2d, 1943); *Slaymaker Lock Co.* v. *Reese,* 24 F. Supp. 69 (E. D. Pa., 1938). En verdad, el propio caso de *Oursler* discute el de *Stark,* aparentemente con aprobación, a las págs. 241–2 del tomo 289 de U.S. Por tanto no nos incumbe decir, como lo hace el comentarista, 52 Yale L.J. 922, supra, a la pág. 926, que "La mejor práctica parece ser inquirir si la prueba necesaria para establecer los varios actos desleales es sustancialmente idéntica, y no resolver la cuestión jurisdiccional únicamente por el fundamento de si los actos ocurrieron

la Corte Federal, como se hizo en este caso, alegando un derecho creado por un estatuto Federal que también confiere jurisdicción a las cortes Federales para ver los casos que alegan dicho derecho, un derecho no Federal, que no resulta de un estatuto Federal, puede incluirse en el referido pleito solamente si dicho derecho forma parte de la misma causa de acción.([19]) Y un derecho no Federal que surja con anterioridad a la aprobación de la ley Federal bajo la cual se basó el pleito original, no forma parte, de conformidad con el caso de *Stark*, de la misma causa de acción envuelta en el pleito Federal. Por tanto, si el querellante en este caso hubiera tratado de incluir en sus pleitos Federales, la reclamación por los salarios de 1935–38 de acuerdo con la Ley insular número 49, la Corte Federal hubiera venido obligada a desestimar la misma por falta de jurisdicción.([20])

antes o después del registro.'' La mejor exposición de las consideraciones opuestas, incluyendo el argumento de economía judicial a favor de un pleito en lugar de dos para resolver dos o más reclamaciones provenientes de una situación de hechos, a pesar de sus diferentes fuentes legislativas, se encuentran en las opiniones de la mayoría y disidentes en *Zalkind* v. *Scheinman*, 139 F. (2d) 895 (C.C.A. 2d, 1943) y *Musher Foundation* v. *Alba Trading* Co., 127 F. (2d) 9 (C.C.A 2d, 1942). Pero ésta es una cuestión de jurisdicción Federal; por tanto debemos seguir la regla establecida por la Corte Suprema de los Estados Unidos en el caso de *Stark*.

([19]) En otras palabras, diversas reclamaciones pueden acumularse cuando constituyen diferentes aspectos de una sola causa de acción pero de ningún otro modo.

([20]) Escasamente nos hubiéramos aventurado en ir tan lejos en nuestro razonamiento si no nos hubiéramos sentido razonablemente seguros de que los derechos bajo la Ley sobre Normas Razonables del Trabajo, a los fines de este caso específico, emanan principalmente del estatuto y no de un contrato. Nos consta que el caso de *Keen* v. *Mid-Continent Petroleum*, 58 F. Supp. 915 (Dist. Ct., N. Iowa, 11 de enero de 1945), 13 L.W. 3373, con el fin de evadir el término prescriptivo de seis meses de una ley de Iowa sobre reclamaciones surgentes de conformidad con cualquier estatuto Federal y permitir que se empleara un período prescriptivo mayor para las reclamaciones basadas en contratos, resolvió que ''la responsabilidad bajo la Ley sobre Normas Razonables del Trabajo es básica y esencialmente contractual en su naturaleza.'' Compárese *Loggins* v. *Steel Const. Co.*, 129 F. (2d) 118 (C.C.A. 5th, 1942). Pero esto sólo refuerza nuestra tesis de que las cortes rehusan rendirse a la tiranía de un nombre, conveniente en su contexto, pero inadecuado en otra situación de hechos. *Cf. Gobierno de la Capital* v. *Consejo Ejecutivo*, 63 D.P.R. 434.

Pero satisfechos ya de que (a) el derecho no Federal aquí es una causa de acción "diferente", y de que (b) la corte Federal no hubiera tenido jurisdicción de la misma dentro del caso Federal fundado en el derecho Federal, forzoso es concluir que la doctrina contra el fraccionamiento de una causa de acción no ha sido infringida en este caso. Dicha doctrina "sólo es aplicable cuando la ley no ha puesto impedimento alguno para que él pueda obtener, en la acción que ha entablado, todo el remedio a que tiene derecho," *Taub* v. *McClelland-Colt Commission Co.*, 51 Pac. 168 (Colo.), citado con aprobación en *Taylor* v. *Continental Supply Co.*, 16 F. (2d) 578, 581 (C.C.A. 8th, 1926). "La regla en cuanto al fraccionamiento de las causas de acción sólo se aplica a reclamaciones, 'que entonces son recobrables' en la primera acción." *United States* v. *Pan-American Petroleum Co.*, 55 F. (2d) 753, 782 (C.C.A. 9th, 1932). *Cf. U. S.* v. *Calif. & Oregon Land Co.*, 192 U. S. 355; *Baltimore S. S. Co.* v. *Phillips*, 274 U.S. 316. Véase 1 Moore, supra, sección 204, pág. 147, escolio 19.

Nos damos cuenta de la contención que puede hacerse en un intento para evadir las autoridades que hemos citado. Es más o menos como sigue: el querellante tenía a su disposición en 1942 dos medios por los cuales pudo haber obtenido en un solo caso sus reclamaciones de salarios, tanto bajo la Ley insular como la Federal provenientes de los hechos relacionados con su empleo desde 1938 a 1942. El primer medio hubiera sido acumular todas sus reclamaciones bajo la Ley Federal y la insular, ora sean éstas causas de acción "diferentes" o no, en un pleito Federal basado en diversidad de ciudadanía.[21] El segundo hubiera sido que el querellante

[21] Toda vez que la diversidad de ciudadanía—más la cuantía jurisdiccional—y no la naturaleza de la controversia determina la jurisdicción bajo esta circunstancia, es innecesario que las reclamaciones se relacionen entre sí (Shulman and Jaegerman, supra, pág. 408; *Armstrong Co.* v. *Nu-Enamel Corp.*, 305 U.S. 315, 325, escolio 9). También, aun cuando las reclamaciones no lleguen a $3,000 cada una, pueden agruparse para llegar a la cuantía jurisdiccional (*B. & O. Southwestern R. R. Co.* v. *United States*, 220 U. S. 94, 106; *Kimel*

reclamara sus salarios por el 1938–42 bajo la Ley sobre Normas Razonables del Trabajo ante una corte insular e incluir en ella su reclamación bajo la Ley insular número 49 correspondiente a 1935–38 surgentes de los mismos hechos relacionados con el empleo.([22]) El argumento sería que aquí es de aplicación la analogía de que uno no puede evadir la regla contra el fraccionamiento de una causa de acción recurriendo primeramente a una corte de jurisdicción limitada, en cuanto a la cuantía y tipo de acción, y luego entablar un pleito por el remanente de la reclamación, en una corte de jurisdicción general. *Restatement, Judgments,* sec. 62j, págs. 253–4. La teoría es que con ello la parte voluntariamente aminora su causa de acción.

Pero existen por lo menos dos diferencias entre dicha situación y el presente caso. Aquí tenemos una cuestión de distribución de jurisdicción entre cortes de diferentes soberanías.([23]) Además, nuestro caso envuelve derechos creados por distintos cuerpos legislativos, con disposiciones expre-

v. *Mo. State Life Ins. Co.,* 71 F. (2d) 921, 924 (C.C.A. 10th, 1934); *Yates* v. *Whyel Coke Co.,* 221 Fed. 603, 606 (C.C.A. 6th, 1915); *Mass. Protective Ass'n* v. *Kittles,* 2 F. (2d) 211 (C.C.A. 5th, 1924). Y aquí, cuando se suman conjuntamente todas las reclamaciones Federales y no Federales, aparentemente pasan de $3,000. Toda vez que la demandada es una corporación extranjera y los querellantes son todos ciudadanos y residentes de Puerto Rico, existe el requisito de diversidad de ciudadanía.

([22]) La teoría aquí sería que las cortes insulares tienen jurisdicción concurrente sobre reclamaciones bajo la Ley sobre Normas Razonables del Trabajo (Título 29 U.S.C.A. sec. 216 (b) ); y que la Regla 18(a) de nuestras Reglas de Enjuiciamiento Civil—Artículo 104, Código de Enjuiciamiento Civil, de nuestra ley anterior—permite la inclusión de la reclamación para 1935–38 de acuerdo con la Ley número 49. Dejamos a un lado las complicadas cuestiones de si una corte municipal tendría jurisdicción ilimitada sobre la reclamación bajo la Ley sobre Normas Razonables del Trabajo (*J. L. Wiewall & Co.* v. *Corte Municipal,* 61 D.P.R. 456) y si es de aplicación el procedimiento sumario que se encuentra en la Ley número 10 de 1917 ( (II, pág. 217). *Cf. Herb* v. *Pitcairn* 324 U.S. 117, resuelto en 5 de febrero de 1945; *Garrett* v. *Moore-McCormack Co.,* 317 U.S. 239).

([23]) Si bien técnicamente la autoridad de ambas cortes, la Federal y la insular, emana de la misma soberanía, similares consideraciones motivaron al Congreso al proveer la jurisdicción de la Corte de Distrito de los Estados Unidos para Puerto Rico. (Título 48 U.S.C.A. secciones 863, 864).

sas para el cumplimiento de los mismos mediante procedimientos sumarios y especiales incluídos separadamente en cada estatuto.

El segundo inciso del *Restatement,* sec. 62k, pág. 255, aunque no enteramente de aplicación aquí, ofrece otra situación análoga en la que se evade la regla que se encuentra en el 62j. Dice que, "la doctrina contra el fraccionamiento de una causa de acción, que normalmente impide que se obtengan dos sentencias cuando originalmente sólo había una causa de acción, no necesariamente impide a una persona agraviada de solicitar un remedio que, bajo las circunstancias, puede sólo aplicarse a parte de la materia. . . . cuando un demandante inicia una acción en un Estado en el cual las cortes tienen jurisdicción solamente con referencia a una porción de su causa de acción, éste no está impedido (*barred*) de iniciar una acción en la corte correspondiente en cuanto a la otra porción." Véase también *Tribby* v. *O'Neill,* 39 App. D. C. 467 (1912).

¿Cuál es la analogía más cercana aquí—el inciso 62k o el inciso 62j? El derecho a reclamar en este caso por los salarios de 1935–38 surgió antes de que se aprobara la Ley sobre Normas Razonables del Trabajo. Esto requiere, como hemos visto, una resolución en cuanto a que la reclamación de 1935–38 bajo la Ley número 49, a los fines de la jurisdicción de cortes de diferentes soberanías, es una causa de acción diferente a la reclamación por los salarios de 1938–42 bajo la Ley sobre Normas Razonables del Trabajo. Y todas las autoridades que podrían invocarse contra el querellante, incluyendo el inciso 62k, sólo se aplican al intento de fraccionar la misma causa de acción. Esto es suficiente para decidir este punto contra la demandada.[24]

(24) Los hechos de este caso no exigen que contestemos el problema de si el obtener sentencia en un pleito bien ante una corte insular o ante la Federal por trabajo posterior a 1938, con respecto al cual la Ley número 49 y la Ley sobre Normas Razonables del Trabajo proveen el pago extra sobre bases diferentes y que contienen diferentes remedios para hacerlas cumplir, impide (*bars*)

Hay otra manera de abordar este punto, en parte de naturaleza procesal, que nos lleva al mismo resultado. La Corte Suprema de los Estados Unidos ha llamado a dos derechos—uno, la violación de una marca de fábrica, que es Federal; el otro, competencia desleal, que no es Federal— la "misma causa de acción" para poder justificar el que se asuma jurisdicción por las cortes Federales no obstante la ausencia de diversidad de ciudadanía, en cuanto al derecho no Federal, resolviendo con ello en un pleito ambas controversias, nacidas de los mismos hechos. Pero cuando existen hechos como los nuestros y como aquellos del caso de *Stark*, la Corte Suprema dice que el derecho no Federal es una causa de acción "diferente". Echando temporalmente a un lado la barrera de falta de jurisdicción, el hecho de que el derecho no Federal sea una causa de acción "diferente" arrastra consigo como corolario la proposición de que su inclusión con la reclamación Federal es permisiva, no mandatoria. Y en cuanto a inclusión permisiva, *Scott*, supra, dice, a la pág. 26, que un demandante "no vendrá obligado a acumular todas las reclamaciones que pueda tener contra

un pleito posterior en la otra corte solicitando remedio surgente de los mismos hechos relacionados con el empleo bajo el estatuto que no fué invocado en el primer caso. ¿Envolverían los hechos bajo dichas circunstancias la "misma" causa de acción a pesar del hecho de que existen las reclamaciones en virtud de leyes de diferentes cuerpos legislativos y que proveen distintos remedios? Dejamos esa cuestión sin resolver. "No debe complicarse la decisión de un caso discutiendo cuestiones cuya determinación es innecesaria." (*The Republic of Mexico, et al. etc.* v. *Hoffman*, 324 U.S. 30, resuelto en 15 de febrero de 1945). *Cf. D. & L. Production Co.* v. *Cuniff*, 180 S.W. (2d) 205 (Tex., 1944), en el que se resolvió que un pleito ante una corte estatal *bajo un contrato privado de servicios* por jornales devengados después de 1938, impedía (*barred*) un pleito posterior ante una corte estatal reclamando tiempo extra bajo la Ley sobre Normas Razonables del Trabajo por el mismo empleo. Compárese el escolio 20.

Notamos de paso que aquí están ausentes las dificultades resultantes de los casos de compensaciones a obreros donde bien un estatuto Federal o estatal, contrario a la Ley número 49 y a la Ley sobre Normas Razonables del Trabajo, expresamente dispone que los remedios para su cumplimiento en cortes de jurisdicciones diferentes, son mutuamente exclusivos. *Davis* v. *Dept. of Labor*, 317 U.S. 249; *Magnolia Petroleum Co.* v. *Hunt*, 320 U.S. 430.

el demandado. . . De acuerdo con . . . los estatutos modernos el demandante puede incluir todas las reclamaciones que tenga contra el demandado. . Así se dispone en la número 18 de las Reglas Federales de Procedimiento Civil. *Sin embargo, no viene obligado a incluir aún aquellas reclamaciones que surgieron de la misma transacción, siempre y cuando sean diferentes causas de acción.''* (Bastardillas nuestras). *Norwood* v. *McDonald,* 52 N. È. (2d) 67 (Ohio, 1943). Cuando se elige no acumular la segunda reclamación, esto no impide *(bar)* por tanto un pleito posterior e independiente para ello.([25])

Concluímos en que la política pública contra el fraccionamiento de una causa de acción—poderosa como es—([26]) no impide la radicación de un pleito en las cortes insulares por una reclamación de salarios bajo la Ley insular número 49 que surge antes de la fecha en que se aprobó la Ley sobre Normas Razonables del Trabajo de acuerdo con la cual los derechos bajo la Ley local no hubieran podido hacerse efectivos con éxito en un caso radicado bajo la ley Federal en una corte Federal. Restringida a esta circunstancia, nuestra decisión no abre una caja de Pandora de pleitos viejos. No se viola la política pública insular al permitir que el caso

---

([25])La cuestión de si la inclusión de reclamaciones Federales y no Federales es *siempre* una cuestión de inclusión permisiva más bien que mandatoria en las cortes Federales—por ejemplo, en cuanto a reclamación por servicios prestados después de 1938—no está ante nos y no la comentamos. Shulman y Jaegerman, supra, discuten la cuestión exclusivamente desde el punto de vista *jurisdiccional.* Al redactar una regla de procedimiento estatal la Legislatura o cualquier otra autoridad para ese fin sólo tiene que ver con el problema de si la acumulación de reclamaciones es conveniente. Pero las cortes Federales deben determinar primeramente si la corte tiene poder para adjudicar reclamaciones cuya acumulación se propone. En las cortes estatales (pág. 398), ''la cuestión fundamental es hasta qué extremo puede un demandante incluir en una acción reclamaciones basadas en hechos enteramente separados. Pero en las cortes Federales dicha cuestión ha sido considerada junto a otra, es decir, hasta qué extremo *puede* la corte considerar reclamaciones basadas en una ley no Federal, más bien que en una Federal, aun en relación con un solo grupo de hechos.'' (Bastardillas nuestras).

([26])*Pueblo* v. *Lugo Irizarry,* resuelto en 13 de febrero de 1945, ante, pág. 554.

de autos continúe y sea resuelto en sus méritos. La corte de distrito no cometió error al rechazar la defensa especial de *res judicata*.

## III

■■ En cuanto a los méritos, lamentamos encontrar que una corte de distrito una vez más hizo caso omiso de nuestras opiniones en los casos de *Cardona, Muñoz Colón* y otros. El propio querellante alegó y probó que su convenio era por un sueldo mensual. Absolutamente nada hay en el récord que justifique una resolución al efecto de que se tuvo en mente que dicho sueldo cubriría únicamente trabajo por ocho horas. De acuerdo con la Ley según está hoy día redactada, el querellante por tanto recibió paga total excepto la doble paga por la novena hora. Usando las propias cifras del querellante, éste devengó como paga doble por la novena hora, desde noviembre de 1935 a noviembre de 1936, la suma de $32.30 y desde noviembre de 1936 a 24 de octubre de 1938, la suma de $79.78.([27]) Por tanto el importe total a que tenía derecho era $112.08.

Por lo que hemos dicho resulta obvio que la corte inferior cometió error al otorgar honorarios de abogado al querellante. La demandada estuvo justificada en oponerse a una reclamación de $2,602.36 cuando de hecho sólo adeudaba $112.08.([28])

*La sentencia será modificada concediendo al querellante la suma de $112.08, sin honorarios de abogado. Así modificada, se confirmará la sentencia.*

([27]) Durante el primer período recibió $35 mensuales. Alegó que trabajó trece horas diarias durante los 365 días del año. Por tanto trabajó a razón de $.0885 por hora, y el pago de la novena hora por los 365 días a ese tipo asciende a $32.30.

El segundo período comprende 717 días, durante los cuales recibió $44 mensuales. A base de un día de trece horas, esto equivale a $.11127 por hora. Y por tanto por la novena hora durante los 717 días a ese tipo, el querellante debe recibir $79.78.

([28]) Lo que hemos expuesto hace innecesario que decidamos aquí si la corte de distrito podría en alguna ocasión conceder honorarios de abogado en tales casos.