ALEJANDRINA BLANCO ROMANO, asistida por su esposo JOSÉ BENET, demandantes, apelados y apelantes, *v.* LA CAPITAL DE PUERTO RICO, como Sucesora del Municipio de Río Piedras, y MANUEL DE J. CANINO, demandados y apelante la primera.

Número 11071.

*Sometido:* 1 de febrero de 1954. *Resuelto:* 17 de mayo de 1954.

*Rodolfo F. Aponte*, abogado de la demandada, apelante y apelada; *José Benet Colón*, abogado de los demandantes, apelados y apelantes.

EL JUEZ PRESIDENTE SEÑOR SNYDER emitió la opinión del Tribunal.

En 1941 Alejandrina Blanco Romano compró un solar que luego vendió en 1942 a Luis Martínez Gelabert por $700.15. Poco tiempo después surgió una controversia entre Martínez y el Municipio de Río Piedras ya que éste reclamaba ser el dueño del solar. En 1942 Martínez instó pleito sobre aclaración del título del solar y para que se ordenara al Municipio que retirara del mismo las ruinas de un matadero que perteneció al Municipio y que radicaba en el solar.

En 1943 Alejandrina Blanco y Luis Martínez Gelabert convinieron en rescindir la venta del solar a este último. A virtud del convenio Alejandrina Blanco adquirió los derechos que pudieran corresponderle y asumió las responsabilidades en que pudiera incurrir Martínez en el pleito sobre aclaración de título. La vista del caso se celebró ante el anterior Tribunal de Distrito y se dictó sentencia a favor de la demandante. Revocamos esta sentencia y dictamos una nueva declarando que el Municipio era el dueño del solar. *Martínez* v. *Municipio*, 64 D.P.R. 158.

Sin embargo, nuestra sentencia no puso fin a la controversia. El anterior Tribunal de Distrito posteriormente declaró con lugar una moción de la demandante solicitando nuevo juicio por el fundamento de que se había descubierto nueva evidencia. En apelación, confirmamos la resolución concediendo el nuevo juicio. Se vió el caso otra vez y a base de evidencia recién descubierta, la sentencia entonces fué a favor de la demandante. Esta sentencia, que se convirtió en

firme en 1948, disponía (1) que la demandante era la dueña del solar, (2) que el demandado tenía que retirar las ruinas del matadero que había en el solar, y (3) que se concedían a la demandante las costas sin honorarios de abogado.

Pasemos el caso ante nos. Después de ser firme en 1948 la sentencia en el pleito sobre aclaración del título del referido solar, Alejandrina Blanco, asistida por su esposo, Lic. José Benet Colón, radicó un nuevo pleito en 1949—el caso de autos —contra el Municipio de Río Piedras y Manuel de J. Canino por (1) daños y perjuicios porque a la demandante y a Martínez se les privó, según se alega, del uso del solar durante varios años, (2) el valor de la tierra que alegan Canino extrajo del solar y la depreciación sufrida en el valor del solar, (3) honorarios de abogados en que se alega incurrió Alejandrina Blanco en el pleito sobre el título del solar, y (4) daños punitivos. Posteriormente el Municipio de Río Piedras fué sustituído por La Capital de Puerto Rico como parte demandada, a tenor con la Ley núm. 210, Leyes de Puerto Rico, 1951 (pág. 559).

Luego de un juicio en los méritos, el Tribunal Superior dictó sentencia (a) a favor de Canino y (b) a favor de la demandante y en contra de la Capital por $5,405.94, costas y honorarios de abogado en la suma de $350. Con respecto a la extracción de tierra del solar, el tribunal sentenciador resolvió que no existían daños a favor de la demandante ni de parte de Canino ni de la Capital. La sentencia a favor de la demandante y contra la Capital ascendente a $5,405.94 como daños constaba de las siguientes partidas: (1) $1,369.20 (intereses al 6% durante 7 años—el tiempo durante el cual el tribunal sentenciador resolvió que se privó a la demandante del uso del solar—sobre $3,260.15, valor fijado al solar por el tribunal sentenciador) ; (2) $3,500 por los servicios legales del Lic. Benet en el pleito anterior sobre aclaración de títulos; (3) $500 como honorarios pagados a otro abogado en el mismo pleito anterior; (4) costas ascendentes a $36.74 en el refe-

rido pleito anterior. Tanto la demandante como la Capital han apelado de la sentencia del Tribunal Superior.[1]

■ Examinemos primeramente la contención de la Capital al efecto de que el tribunal sentenciador cometió error al conceder daños en este pleito por los honorarios de abogado en que se incurrió en el pleito anterior sobre aclaración de títulos. Si la demandante era de opinión que tenía derecho a recibir honorarios de abogado en relación con el pleito sobre aclaración de título del solar, venía obligada aquélla a así recobrarlos en el referido pleito. En verdad, como hemos visto, en dicho caso la sentencia del tribunal sentenciador específicamente disponía que la demandante no tenía derecho a honorarios de abogado. Y la demandante no apeló de dicha parte de la sentencia, que es ahora firme. Convenimos con la demandada en que la demandante no puede ahora relitigar dicha cuestión radicando un nuevo pleito reclamando honorarios de abogado bajo el pretexto de daños resultantes de la controversia en cuanto al título del solar. Esto está de acuerdo con lo resuelto por nosotros en *Vélez* v. *General Motors Etc. Corp.*, 59 D.P.R. 584, 588–9. Como dijimos en *Avalo* v. *Cacho, hoy su sucesión*, 73 D.P.R. 286, 294, los casos en que hemos resuelto que pueden recobrarse honorarios de abogados en concepto de daños cuando se incurren a fin de disolver una orden de entredicho o un embargo ilegal, son distinguibles. *Blanco* v. *Hernández et al.*, 19 D.P.R. 808, el único caso citado por el tribunal sentenciador sobre este punto, aparentemente envolvía hechos diferentes y no discute la cuestión ante nos.

■ Las mismas consideraciones que impiden un pleito posterior en *cobro de honorarios de abogado* como daños incurridos en el pleito anterior, operan para impedir el presente pleito por costas concedidas, pero no cobradas, en el pleito anterior. Véase *Rosario* v. *Ruiz y Polanco*, 63 D.P.R. 93.

■ El próximo punto envuelve la cuestión de daños con

[1] La parte de la sentencia a favor del demandado Canino no ha sido apelada. Por consiguiente nada tenemos que ver con su alegada responsabilidad.

motivo de haber sido la demandante privada del uso del solar durante cierto número de años. La Capital alega que la demandante está impedida por la doctrina de *res judicata* de entablar pleito por tales daños, ya que pudo litigar esta cuestión, pero no lo hizo, en el pleito anterior sobre aclaración de títulos. Véase *Avellanet* v. *Porto Rican Express Co.*, 64 D.P.R. 693, 700–1; *Miller* v. *Cía. Ron Carioca*, 71 D.P.R. 707; *Pueblo* v. *Lugo*, 64 D.P.R. 554, 559; *Sucn. Rivera* v. *Lugo*, 63 D.P.R. 14; *Laloma* v. *Fernández*, 61 D.P.R. 569; *Cromwell* v. *County of Sac*, 94 U. S. 351; *Méndez* v. *Bowie*, 118 F.2d 435 (C.A. 1, 1941). Adoptamos la regla contraria en *Capó* v. *A. Hartman & Cía.*, 57 D.P.R. 196. En dicho caso resolvimos que si un demandante no incluye su reclamación por cánones y frutos en una demanda de reivindicación, no queda por ello impedido de entablar un pleito posterior en cobro de aquéllos después de obtener sentencia en el de reivindicación. Véanse también *Encarnación* v. *Maeso*, 48 D.P.R. 480; *Blanco* v. *Hernández et al.*, supra. Reconocemos que la regla puede ser diferente en los Estados Unidos continentales. *Cf.* *McCaffrey* v. *Wiley*, 230 P.2d 152 (Cal., 1951); *Hunter* v. *Delta Realty Co.*, 169 S.W.2d 936 (Mo., 1943); *Bruton* v. *Carolina Power & Light Co.*, 6 S.E.2d 822 (N.C., 1940); *United States* v. *Munsingwear*, 340 U. S. 36; *Angel* v. *Bullington*, 330 U. S. 183; *Restatement Judgments*, secs. 61–67, especialmente *Illustration* 5, págs. 246–7; *Comment a*, pág. 283, pág. 239; *Development in The Law–Res Judicata*, 65 Harv.L.Rev. 818, 824–31, especialmente págs. 827 y 829; Clark *on Code Pleading*, 2da. ed., 127–28, 136, 473–78; Freeman *on Judgments*, 5ta. ed. sec. 597, pág. 1258; Scott, *Collateral Estoppel by Judgment*, 56 Harv.L.Rev. 1, 22–26. Pero, por los motivos expuestos en el caso de Capó, nos adherimos a nuestra regla. La reclamación de daños por haberse privado a la demandante del uso del solar no estaba impedida por la doctrina de *res judicata* en este caso.[2]

---

[2] El pleito posterior de daños aparentemente no estaría impedido por *res judicata* si tratamos el caso anterior como uno de sentencia declaratoria más bien que de reivindicación. Véanse *Winborne* v. *Doyle*, 59 S.E.2d

 Sostiene entonces la demandada que el tribunal sentenciador cometió error al apreciar la evidencia cuando concluyó que (*a*) la demandada privó a la demandante del uso del solar y (*b*) la demandante tenía derecho a daños en la suma de $1,369.20 por dicho concepto. La conclusión del tribunal sentenciador en cuanto a (*a*) está sostenida por la evidencia y no la alteraremos. En cuanto a (*b*), el tribunal sentenciador concluyó que "los solares" valían $3,260.15; que la demandante había sido privada de su posesión por la demandada durante siete años; y que la demandante tenía en su consecuencia derecho a recibir intereses al 6% sobre $3,260.15 por siete años, o sea $1,369.20.

La demandada arguye que la demandante fué privada de su posesión durante 5 años, 6 meses y 23 días, y no durante 7 años. No estamos conformes. Por otro lado, creemos que la cifra de 7 años determinada por el tribunal sentenciador es errónea. Existe alguna evidencia en los autos al efecto de que no surgió controversia alguna en cuanto al título del solar hasta el 5 de marzo de 1942, fecha en que Martínez lo adquirió. Sin embargo, toda vez que los autos contienen también evidencia de que dicha controversia ya existía en 1941, aceptamos la conclusión de hecho del Tribunal Superior a ese efecto. Pero es obvio que los daños de la demandante no empezaron a surgir hasta el 25 de octubre de 1941, fecha en que ella adquirió el solar. Por tanto, ésta tenía derecho a reclamar daños no por 7 años, sino por 6 años, 9 meses y 6 días, que es el período existente entre el 25 de octubre de 1941 y el 31 de julio de 1948, fecha en que se convirtió en firme la sentencia a su favor en el pleito anterior.

El tribunal sentenciador, como hemos visto, resolvió que los daños eran intereses al 6% durante el período en que se

90, 93, (Va., 1950); *Big Cola Corporation et al.* v. *World Bottling Co., Limited,* 134 F.2d 718, 723 (C.A. 6, 1943); *Cotrone* v. *Iervoline,* 54 N.Y.S.2d 119 (N. Y., 1945); *Great Northern Ry. Co.* v. *Mustad,* 33 N.W.2d 436, 441 (N. D., 1948); *Restatement, Judgments,* sec. 77, *Comment b,* págs. 343–44; *Development In the Law–Res Judicata,* 65 Harv.L.Rev. 820, 881–82; 2 Anderson, *Declaratory Judgments,* sec. 461, pág. 1103. *Cf. Developments In the Law–Declaratory Judgments,* 62 Harv.L.Rev. **787, 843–44.**

privó a la demandante de su propiedad, sobre $3,260.15, valor del solar según la corte. Ésta aparentemente utilizó la cifra de $4 por metro cuadrado como el valor del solar porque dicha cantidad le fué concedida a la demandante por una parcela colindante en un pleito instado por ésta contra el Pueblo de Puerto Rico en 1945. La demandante no cuestiona esta valoración de $4 el metro cuadrado. Sin embargo, como correctamente indica, el tribunal sentenciador, aparentemente confundiendo los dos solares, concedió daños a $4 el metro sobre un solar considerablemente mayor que el que está aquí en controversia. Los autos claramente demuestran que éste sólo tenía una cabida de 350.075 metros cuadrados. Por consiguiente el interés debió calcularse sobre un valor de $1,400.30 —$4 × 350.075 metros cuadrados—y no sobre $3,260.15. En tal virtud, los daños de la demandante fueron el 6% sobre $1,400.30, durante 6 años, 9 meses y 6 días, o sea $568.82 (³)

En vista de lo anteriormente expuesto, el tribunal sentenciador también cometió error al conceder a la demandante $350 para honorarios de abogado en este caso.

La demandante sostiene en su apelación que el tribunal sentenciador cometió error al no concederle (1) daños por la alegada extracción de tierra del solar, (2) daños dobles por depreciación en el valor del dólar, y (3) daños punitivos. Hemos examinado estas contenciones y no encontramos error alguno en la actuación del tribunal sentenciador en relación con las mismas.

*La sentencia del Tribunal Superior será modificada a fin de que disponga que la demandante tiene derecho a la suma de $568.52, sin honorarios de abogado, como daños por habérsele privado de la posesión del solar. Así modificada, la sentencia será confirmada.*

(³) Notamos de paso que cuando había terminado la controversia por el título del solar en 1948 y la demandante finalmente pudo venderlo, ésta lo vendió en 1949 por $3,500, mientras que originalmente ella lo había vendido en 1942 a Martínez por $700.15. La posposición hasta 1949 de cualquier venta posterior—después de la rescisión en 1943 de la venta a Martínez—fué por consiguiente bastante beneficiosa para ella.

650

*Sometido:* 14 de junio de 1954. *Resuelto:* 22 de diciembre de 1954.

El presente es un litigio en que se solicitan entre otras cosas (1) daños y perjuicios porque la demandante fué privada del uso de terreno durante un número de años, y (2) el valor de cierta tierra supuestamente extraída de dicho terreno, más la depreciación en el valor del mismo como resultado de la referida extracción. Los hechos figuran en nuestra opinión y sentencia del 17 de mayo de 1954, en que modificamos la sentencia del Tribunal Superior para que proveyera que la demandante tenía derecho a daños en cuanto a la partida (1) en la suma de $568.52. Obtuvimos esta cifra al concederle a la demandante, por el tiempo en que la demandada ocupó el terreno, intereses al 6% sobre $1,400.30, el valor de 350.075 metros cuadrados de terreno a $4 el metro. Confirmamos dicha parte de la sentencia del tribunal sentenciador que rechazó la reclamación de la demandante por la supuesta extracción de tierra del terreno en cuestión, y dejamos sin efecto la concesión a la demandante de la suma de $350 para honorarios de abogado.

·· En vista de la moción de reconsideración de la demandante, dictamos una resolución requiriendo de la demandada que contestara la moción en cuanto a si (1) 350.075, 491.45, 990.075, o alguna otra cantidad de metros cuadrados constituían el área de la parcela de cuyo uso fué privada ilegalmente la demandante; (2) debían concederse daños contra la demandada por la remoción de tierras de la parcela núm. 25 y de la núm. 26, y por la eliminación de un supuesto promontorio en el solar núm. 25; (3) la concesión de honorarios de abogado debiera confirmarse, modificarse o revocarse a la luz de lo resuelto en el caso de *Soto* v. *Lugo*, 76 D.P.R. 444.

En cuanto al primer punto, una vez más hemos examinado cuidadosamente los autos de este caso así como los del de *Martínez* v. *Municipio*, 64 D.P.R. 158, que es el caso civil núm. 8848 en este Tribunal. El nuevo estudio que hemos hecho robustece nuestra conclusión original al efecto de que la

demandante no probó que fué ilegalmente privada de más de 350.075 metros cuadrados de terreno. Según se desprende de nuestra opinión original en este caso, la cuestión envuelta en 64 D.P.R. 158 era el título de la parcela y la cabida de la misma; fué sólo después de resolverse ese punto en el referido caso, que se radicó y se vió el presente de daños y perjuicios. Cuando examinamos el pleito sobre aclaración de títulos—el primer caso—encontramos que el párrafo dos de la demanda dice que el mismo envuelve el solar núm. 25, consistente de 350.075 metros cuadrados, descritos en detalle en dicho párrafo. La sentencia del tribunal sentenciador en dicho caso fué al efecto de que la demandante era dueña de la parcela descrita en dicho segundo párrafo. Cuando revocamos dicha sentencia y resolvimos en 64 D.P.R. 158 que el demandado era dueño de la parcela, también específicamente hicimos referencia en nuestra opinión a la parcela núm. 25. La demandante, a través de su alegato en dicho caso, se refirió una y otra vez a la parcela núm. 25 como objeto del litigio. Véanse las págs. 3, 6, 8, 12, 13, 14, 18 y 19 del alegato de la demandante en el caso núm. 8848. En la moción radicada ante este Tribunal en reconsideración de nuestra decisión en 64 D.P.R. 158, la cual declaramos sin lugar, la demandante repitió que la parcela núm. 25 era lo que estaba envuelto en el caso. Aún más significativo, dice ella en la moción de reconsideración que Canino ". . . aparece comprándole por permuta ese *solar 25* al municipio durante el transcurso de este pleito . . .". (Bastardillas nuestras.) En su memorándum en apoyo de la moción, la demandante dice que ". . . la cabida de los solares 25 y 26 es de 790 metros y, *a lo sumo, el municipio nunca ha reclamado más de 491 metros.*" (Bastardillas nuestras.) El efecto práctico es que en esta etapa del caso—sentencia a favor del demandado en virtud de nuestra opinión en 64 D.P.R. 158—el caso incuestionable trataba sólo del solar 25, con un área de 350.075 metros cuadrados.

Según se indicó en nuestra opinión original del 17 de mayo de 1954 [ante pág. 642] el tribunal sentenciador declaró

con lugar una moción de nuevo juicio del caso en que dictamos sentencia a favor del demandado en 64 D.P.R. 158. Se vió el caso de nuevo y se dictó nueva sentencia en 1947 a favor de la demandante, contra la cual no se interpuso recurso de apelación, quedando firme dicha sentencia en 1948. Durante el nuevo juicio una importante pieza de evidencia fué la contestación del antecesor de la demandada en un antiguo pleito ante la corte federal. Es cierto que dicha contestación se refería al terreno *allí en disputa* como que consistía de alrededor de 1,000 metros cuadrados, y que dicha parcela de 1,000 metros incluía el terreno aquí envuelto. Pero nada hay en los autos que indique que el caso federal, resuelto en 1911, envolvía precisamente la misma parcela que nos ocupa ahora, que fué dividida en solares con fines de urbanización en 1937. Por el contrario, la sentencia que se dictó como resultado del nuevo juicio—lo mismo que en nuestra decisión en 64 D.P.R. 158— claramente envolvía la parcela núm. 25, que se describía con una cabida de sólo 350.075 metros cuadrados.

Habiéndose resuelto la cuestión del título, la demandante radicó el caso de autos, en el cual solicita daños por habérsele privado del uso de *dos* parcelas desde *1941 hasta 1948.* Las dos parcelas se describen como el solar núm. 25 en el plano de urbanización, consistente de 350.075 metros cuadrados, y el solar núm. 26 del mismo plano, con 640 metros cuadrados. Contestando interrogatorios de la demandada en el presente caso, la demandante dijo que, con respecto al solar núm. 25, en 1949 ella vendió 304.48 metros a doña Sara García de Viera, por $2,900, y que "el remanente" se le vendió a Roberto Rivera en 1949 por $600. Es significativo el hecho de que nada hay en los autos que demuestre precisamente qué cantidad de terreno estaba envuelta en la venta "del remanente". De igual forma, en contestación a los mismos interrogatorios, la demandante contestó que, en cuanto a la parcela núm. 26, le vendió 383.74 metros cuadrados a Roberto Rivera el 24 de noviembre de *1944,* por $2,800, y que "el remanente" de 251.81 metros cuadrados fué expropiado por el Pueblo de

Puerto Rico, que se vió obligado a pagarle a la demandante la suma de $1,186.37 por sentencia del 18 de diciembre de *1946*.

El caso en que la demandante obtuvo la referida sentencia de $1,186.37 no fué uno de expropiación propiamente dicho. Más bien la demandante instó un pleito de reivindicación contra el Pueblo de Puerto Rico. El tribunal sentenciador resolvió en dicho caso que la demandante había entregado el terreno al gobierno y que la única controversia era el precio. Entonces el tribunal concedió a la demandante una sentencia en dinero en vez de devolverle el terreno, y le concedió por el mismo $4 por metro. En el curso de su opinión el tribunal sentenciador, haciendo un resumen del testimonio del Lic. Benet, esposo de la demandante, dijo que Benet declaró que su esposa ". . . compró los solares 25 y 26 de dicha urbanización, en el primero de los cuales, que tenía un área de 350 metros cuadrados, estaba el antiguo matadero de Río Piedras; que ella se quedó con el solar marcado con el número 26, habiendo sido el solar número 25 objeto de un prolongado pleito que aún está pendiente, *y que sobre el solar 26 nunca ha habido pleito*." (Bastardillas nuestras.)

En el caso ante nos el tribunal sentenciador resolvió que los solares 25 y 26, consistentes de 350.075 y y de 640 metros cuadrados respectivamente, pertenecían a la demandante, y que en el plano de 1937 el matadero aparecía ubicado en los solares 25 y 26. También resolvió el tribunal que por la Ordenanza núm. 250 de 1942 el municipio demandado, alegando que era dueño de los solares 25 y 26, se los cambió a Canino por un solar de éste, y que esta permuta se formalizó mediante escritura del 29 de diciembre de 1944. *Asimismo, resolvió que la sentencia a favor de la demandante en 1947, que pasó a ser firme en 1948, demuestra que la demandante era la dueña de los solares 25 y 26.*

Las anteriores conclusiones de hechos, en tanto en cuanto indican que el solar núm. 26 está envuelto en el presente caso, no tienen base en la evidencia, con excepción de que el pronunciamiento en cuanto a la radicación de los solares en

el plano de 1937 quizás esté parcialmente sostenido por el hecho de que el plano parece indicar que el matadero cubría todo el solar 25 y una pequeñísima parte del 26 cuya cabida no se puede determinar.[1] Como se ha indicado antes, la sentencia que se concedió en el nuevo juicio después de nuestra decisión en 64 D.P.R. 158 fué únicamente para el solar núm. 25, y no incluía el 26. La Ordenanza núm. 250 de 1942 crea alguna confusión porque a primera vista parece indicar que Canino recibiría 491 metros cuadrados. Pero esta ordenanza también contiene el informe de una comisión, que se nombró para estudiar el asunto, al efecto de que el solar tiene aproximadamente 300 metros cuadrados. Y la escritura del 29 de diciembre de 1944, que ponía en ejecución los términos de la ordenanza, específicamente dice que el solar fué medido por un agrimensor y que el mismo podía ser más o menos de la cabida indicada, caso en el cual Canino se beneficiaría de ser mayor la cabida pero que no tendría derecho a indemnización si resultara menor. Ciertamente esto es alguna indicación de que el municipio y Canino no estaban seguros de la cabida del solar núm. 25 y de que en realidad tuvieron por miras traspasar solamente el 25, no importa lo que su área fuese. Además, como hemos visto, en la moción de reconsideración de nuestra opinión en 64 D.P.R. 158, la propia demandante afirma que Canino adquirió *el solar 25* del municipio por permuta. Y la demandante nunca ha sostenido que el solar 25 contenía más de 350.075 metros cuadrados.

No hemos podido encontrar en los autos base alguna para la conclusión del tribunal sentenciador al efecto de que desde 1941 a 1948 el municipio privó a la demandante del uso y disfrute de los solares 25 y 26. En adición al hecho de que

---

[1] Esto contrasta con el *Exhibit* B de la demandante, un plano de 1942, en el que aparece el matadero como ubicado enteramente en el solar 25, y sin ocupar parte alguna del 26. La demandante, a las págs. 14 y 19 de su alegato en el caso núm. 8848, también se refiere al plano de urbanización como que demuestra que el antiguo matadero radicaba en el solar 25. Al mismo efecto, véase 64 D.P.R. 158, 163.

el caso se vió—tanto en 64 D.P.R. 158 como en el nuevo juicio—a base de la teoría de que solamente el solar 25, con una cabida de 350.075 metros cuadrados, estaba en controversia entre las partes, la conclusión de hechos en este caso de que la demandante fué privada del uso de los solares 25 y 26 carece de base en los autos del presente caso. Si bien la demanda de daños que ahora pende ante nos habla de dos solares con cabidas de 350.075 y de 640 metros, respectivamente, y si bien el Lic. Benet testificó en términos generales a través de este caso con respecto a los solares 25 y 26, es claro que el 25 era la única parcela en controversia en todo momento entre las partes. Quizás la mejor prueba de este hecho es que, como ya hemos visto, mientras se dilucidaba esta controversia entre 1941 y 1948, la demandante vendió parte del solar 26—383.74 metros cuadrados—a Roberto Rivera en *1944*, y recibió compensación por 251.81 metros cuadrados en *1946* mediante sentencia en un caso contra el Pueblo de Puerto Rico. También, según dijimos antes, el Lic. Benet declaró en el caso contra el Pueblo de Puerto Rico que culminó en una sentencia a favor de la demandante en 1946, que no había controversia con el municipio en cuanto al solar 26, y que la demandante solicitaba compensación por el mismo porque el Pueblo había aparentemente pagado por error a Canino por su valor. Estas dos porciones del solar 26 —383.74 y 251.81 metros cuadrados—suman 635.55 metros cuadrados, mientras que la demandante en el caso de autos reclama daños por el solar 26 consistente de 640 metros cuadrados. Estas dos cifras—635.55 frente a 640—son casi tan iguales que difícilmente se puede concebir que parte alguna del solar 26 estuviera en controversia entre la demandante y el municipio entre 1941 y 1948. En verdad, la mejor prueba de que el municipio no intervenía para dicha época con la posesión y uso por la demandante del solar número 26—consistente de 640 metros cuadrados—es el hecho de que ella dispuso de 635.55 metros cuadrados del mismo a favor de

Rivera y del Pueblo de Puerto Rico mientras estaba pendiente el litigio aquí envuelto. ([2])

En vista de lo anteriormente expuesto, nos adherimos al criterio expresado en nuestra opinión original del 17 de mayo de 1954 en este caso al efecto de que ". . . el tribunal sentenciador, aparentemente confundiendo los dos solares, concedió daños a $4.00 el metro sobre un solar considerablemente mayor que el que está aquí en controversia. Los autos claramente demuestran que éste sólo tenía una cabida de 350.075 metros cuadrados." Por consiguiente declararemos sin lugar la moción de reconsideración en tanto en cuanto solicita que concedamos daños por haberse privado a la demandante del uso de una parcela mayor de terreno.

La segunda cuestión ante nos en reconsideración es si deben concederse daños contra el demandado por la extracción de tierra de los solares 25 y *26*, y por la remoción de un alegado promontorio en el solar 25. El solar 25 fué adquirido del municipio por Manuel de J. Canino mediante permuta por otro solar, sujeto todo a las resultancias del litigio que estaba pendiente entre el municipio y la demandante en relación con el título del solar. Luego, se rescindió la permuta. El tribunal sentenciador resolvió que durante el tiempo en que Canino estuvo en posesión ". . . se removió tierra de los solares 25 y 26. No creemos que haya quedado establecido en forma concluyente que dicha tierra fuera utilizada para rellenar el solar que Canino traspasó en permuta al Municipio." El tribunal sentenciador en consecuencia no concedió daños por la extracción de tierra ni contra el municipio ni

---

([2]) El Lic. Benet declaró en términos generales en este caso que la controversia entre su esposa, la demandante, y el municipio siempre giró alrededor de los solares núms. 25 y 26, y que él discutió con el Alcalde de Río Piedras la cuestión de la demolición del matadero, el cual ubicaba en los solares 25 y 26. Pero, aparte de lo que ya hemos dicho, la evidencia documental ofrecida por la demandante durante el juicio del caso de autos demuestra que como cuestión de hecho la controversia con el municipio siempre fué sobre el solar 25, consistente de 350.075 metros cuadrados. Así se hace constar en las cartas del 11 de marzo de 1942, 27 de marzo de 1943, 30 de junio de 1943, y 19 de julio de 1943 del Lic. Benet al municipio.

contra Canino. La demandante apeló este pronunciamiento en cuanto al municipio, pero no en cuanto a Canino.

Ya hemos resuelto que el municipio no privó a la demandante del uso del solar núm. 26 en ningún momento. No nos detendremos a determinar si Canino extrajo tierra alguna del solar núm. 26. Suponiendo que la extrajera, el municipio nada tenía que ver con su actuación a este respecto, ya que sólo le traspasó en permuta el solar núm. 25. Y la demandante no apeló de la sentencia en cuanto a este pronunciamiento a favor de Canino.

■ Con respecto al valor de la tierra extraída por Canino del solar núm. 25—y la remoción del supuesto promontorio en el mismo el cual quizás podría argüirse, hubiera sido atractivo para fines residenciales—nada hay en los autos que tenga base suficientemente sólida que nos permita revocar las conclusiones de hechos del tribunal sentenciador y conceder una suma específica en daños por esto. El único testimonio sobre este punto fué la declaración del Lic. Benet, quien manifestó: ". . . Yo . . . medí el terreno ese del Municipio, y tenía 491, lo que ellos decían, más tres metros de alto, porque era una lomita por el frente y dos y medio; y entonces cubiqué y encontré que habían sacado 650 y pico de metros cuadrados de piedra con un valor de dos mil y pico de dólares." Inmediatamente después el Lic. Benet se refirió a esto como metros cúbicos de tierra, y cuando se le pidió que especificara, declaró que cada camión de tierra, consistente de 3 metros cúbicos, valía $4.50. Pero esto significaría, por 650 metros cúbicos, que la misma valía, a base de sus propios números, solamente $976.50, y no $2,000.

Posteriormente, el Lic. Benet, usando las mismas cifras de un solar de *491* metros cuadrados, 3 metros de alto al frente y 2½ metros de alto en cuanto al resto, dijo que la tierra extraída ascendía a 1,351.48 metros. En ambos casos hizo este estimado luego de alegadamente haberse extraído la tierra, sin haber medido antes la altura. También declaró que Canino—no los empleados del municipio—habían extraído

la tierra, la que, según él, se usó para rellenar el solar propiedad de Canino que el municipio había recibido en permuta con aquél.

La declaración de Canino fué al efecto de que él demolió el matadero abandonado, rellenó el pozo negro de los solares 24, 25 y 26, niveló "la protuberancia"—él dijo que no era "una loma"—del solar 25, y con la tierra de éste rellenó el hoyo en el 26. Declaró que no usó esa tierra para rellenar el solar que él traspasó al municipio en permuta y el cual le fué devuelto cuando se rescindió su transacción con el municipio.

Somos de opinión que los autos apoyan la conclusión del tribunal sentenciador al efecto de que no se estableció concluyentemente que la tierra fuera usada para rellenar el solar que Canino traspasó al municipio y que luego volvió a manos de Canino. Tampoco podemos determinar definitivamente el valor, de haber alguno, o la cantidad de tierra extraída del solar 25, a no ser para decir que no pudo ser una cantidad sustancial si Canino sólo removió una "protuberancia". Finalmente, se usó para rellenar el solar 26, el cual según hemos visto pertenecía a la demandante y por el cual ella recibió en dos transacciones $2,800 y $1,186.37 en 1944 y 1946, respectivamente. Y al tiempo en que la demandante vendió el solar 25 en 1949, lejos de sufrir rebaja en el valor, éste había subido aproximadamente de $700 en 1942 a $3,500 en 1949 (³). Bajo todas estas circunstancias, es imposible re-

---

(³) En el escolio 3 de nuestra opinión original del 17 de mayo de 1954 dijimos: "Notamos de paso que cuando había terminado la controversia por el título del solar en 1948 y la demandante finalmente pudo venderlo, ésta lo vendió en 1949 por $3,500, mientras que originalmente ella lo había vendido en 1942 a Martínez por $700.15. La posposición hasta 1949 de cualquier venta posterior—después de la rescisión en 1943 de la venta a Martínez—fué por consiguiente bastante beneficiosa para ella." A esta manifestación añadimos ahora que la demandante, que rescindió la venta de 1943 a Martínez a fin de que fuera ella y no Martínez quien prosiguiera con este pleito, dijo en su moción de reconsideración de nuestra opinión en 64 D.P.R. 158: "Cuando se vendió [en 1943] valía de setecientos a mil." (Corchetes nuestros.)

vocar las conclusiones de hechos del tribunal sentenciador y concederle a la demandante y en contra del municipio una suma específica en daños por la extracción de una cantidad definitiva de tierra del solar 25 a un valor suficientemente establecido en los autos. Por consiguiente no cometimos error en nuestra opinión original del 17 de mayo de 1954 confirmando la sentencia del tribunal sentenciador que no concedió daños por la extracción de tierra del solar número 25.

■ El último punto en la moción de reconsideración es si cometimos error al dejar sin efecto la concesión de $350 para honorarios de abogado en este caso, a la luz de lo resuelto en *Soto* v. *Lugo*, supra. El caso de *Soto* es distinguible. En él resolvimos que el tribunal sentenciador no cometió error al conceder honorarios de abogado cuando los demandados en un pleito de daños que surge de un accidente de automóviles no admitieron su responsabilidad hasta siete días antes del juicio. Es cierto que, según dijimos en dicho caso, el hecho de que la sentencia fuera sustancialmente menor que lo que se reclamaba, por sí sólo, no demostraba ausencia de temeridad, en vista de la demora en admitir responsabilidad. Pero en el presente caso la demandante reclamaba daños por un solar adicional—el número 26—al cual ella no tenía derecho. También reclamaba—según surge de nuestra opinión original—ciertas partidas de daños ascendentes a grandes sumas, a las cuales tampoco tenía derecho. El resultado a que hemos llegado en los méritos de este caso nos convence de que, bajo todas las circunstancias, fué error conceder honorarios de abogado en contra de la demandada. De conformidad con esto, no vemos razón alguna para modificar nuestra opinión y sentencia originales sobre este extremo.

*Por los motivos expuestos, la moción de reconsideración de nuestra opinión y sentencia del 17 de mayo de 1954 en este caso será declarada sin lugar.*