MIGUEL A. CRUZ, demandante y recurrido, *v.* EULALIO ORTIZ, demandado y recurrente.

Número 11867.

*Reasignado*: 20 de mayo de 1961. *Resuelto*: 31 de mayo de 1961.

*Víctor Rivera Colón*, abogado del recurrente; *C. Andréu Ribas*, abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

En 27 de mayo de 1949, el demandante Miguel Angel Cruz presentó una petición de injunction ante la extinta Corte de Distrito de San Juan, en la cual alegó que era dueño de una casa en la Calle Degetau de Santurce; que el querellado era dueño de un edificio colindante de tres plantas, cuya construcción no había sido terminada; que desde hacía más de dos años, o sea en o antes de 1947, al terminar la construcción de las paredes de dicho edificio que colinda con el peticionario, se dejaron seis huecos o espacios abiertos por los cuales se pasan ratas y se lanzan basuras al solar de éste, y, en la tercera planta, varias molduras de madera que amenazan caer en el solar, o sobre el garage de su residencia; que el demandado instaló un tubo respiradero con salida al solar del demandante, y que por dicho tubo sale materia fecal pestilente. Se quejó de que las actuaciones relatadas hacían "insoportable la estadía del peticionario y su familia en su casa residencia, les obligaba a percibir los malos olores que despedían las tuberías del edificio del demandado, perturbando así la paz y tranquilidad del hogar del peticionario con menoscabo de su salud y felicidad." No se hizo reclamación por los daños y perjuicios sufridos por el demandante y sus familiares inmediatos con motivo de los hechos que hemos reseñado.

En 16 de mayo de 1951 se dictó un auto de injunction dirigido al demandado Ortiz, por el cual se le ordenó y requirió: (1) cerrar los huecos en las paredes colindantes con la propiedad del demandante; (2) desprender las molduras de madera a que se ha hecho referencia, (3) cerrar ciertos

huecos y ventanas en un mirador de madera que se había construido sobre la azotea del edificio; (4) eliminar ciertos desagües para evitar que cayeran agua y desperdicios sobre el garage del demandante; y, (5) empañetar una pared para evitar los desprendimientos de partes de bloques de concreto. Entablado recurso de apelación, confirmamos la sentencia dictada. *Cruz* v. *Ortiz*, 74 D.P.R. 321 (1953). Específicamente resolvimos que, consideradas las alegaciones en conjunto, se desprendía que el demandante sufriría daños irreparables, y que por la naturaleza continua de los actos imputados, estaba expuesto a una multiplicidad de procedimientos, y que el remedio existente en el curso ordinario de la ley era inadecuado. Artículo 677 del Código de Enjuiciamiento Civil (32 L.P.R.A. sec. 3523).

En 30 de abril de 1953, tres meses después de haberse confirmado la sentencia, Cruz inició una acción contra Ortiz en reclamación de daños y perjuicios, en la cual alegó que aún no se había terminado de empañetar las paredes del edificio del demandado, a pesar de haberse "terminado" la construcción desde 1949, dando así lugar a que ocurrieran desprendimientos de trozos de bloques y de concreto; que a pesar del auto de injunction, las molduras de madera no han sido eliminadas; que estos desprendimientos y pedazos de moldura caen sobre la casa y el garage del demandante, y que por la acumulación indebida se ha creado "un nido de animales e insectos" en el techo de dichas estructuras, con el consiguiente riesgo para la salud del demandante y sus familiares; que el demandante no ha tapiado varios huecos existentes en dos paredes medianeras, y que además, el demandado ha permitido que en una de las paredes colindantes se hayan dejado dos hilos de alambre "cargados con electricidad" que exponen la casa del demandante a un fuego, por tratarse de una construcción de maderas; que esta situación *ha sido continua* desde 1949 y que los hechos alegados son en abierta violación del auto de injunction expedido. Termina

la demanda reclamando daños por la pérdida de "privacidad", la intranquilidad causada por el peligro de enfermedades debido a la acumulación de basuras en el techo de la casa y el garage del demandante, el temor por el riesgo de la ocurrencia de un fuego, daños causados al automóvil y al techo de la casa del demandante, el temor e intranquilidad por la inseguridad causada ante la posibilidad de desprendimientos, y por la nerviosidad extrema o insomnio producido por el temor a ser heridos en cualquier momento por los desprendimientos antes mencionados.

El demandado interpuso la defensa de cosa juzgada y al efecto alegó que la parte demandante no podía recobrar ya que en el recurso de injunction no se había reclamado por los daños en relación con los cuales se ejercitaba la presente demanda. Esta alegación fue desestimada. Expedimos auto de certiorari para revisarla, y finalmente la confirmamos, *Ortiz* v. *Tribunal Superior, per curiam*, resuelto en 29 de abril de 1954, por el fundamento de que los hechos expuestos en la demanda no eran idénticos ni constituían la misma causa de acción ejercitada en el recurso de injunction y que había culminado en una sentencia firme favorable al demandante, ya que también se alegaba que los actos imputados eran en abierta violación a dicha sentencia. Expresamos que "hay una clara indicación en el párrafo décimo [de la demanda] . . . de que se reclaman los daños y perjuicios causados por la alegada violación, por parte del demandado, de la sentencia de *injunction, o sea los daños causados con posterioridad a dicha sentencia*". No resolvimos, por innecesario a los fines de determinar sobre la procedencia de la defensa de cosa juzgada, si el demandante puede recobrar por los daños sufridos antes de la radicación del recurso de injunction, y durante la tramitación del mismo hasta que la sentencia se convirtió en firme al ser confirmada por este Tribunal en 26 de enero de 1953.

Después de celebrado el juicio correspondiente, el Tribunal

Superior, Sala de San Juan, dictó sentencia en 12 de julio de 1955 declarando con lugar la demanda de daños y perjuicios, y condenó al demandado a satisfacer al demandante las siguientes cantidades:

$125.00, por gastos incurridos en la reparación de un garaje.

$150.00, por gastos incurridos en el cambio de tubería negra para evitar filtraciones de aguas pestilentes;

$500.00, pagados por honorarios de abogado al Lic. César Andreu Ribas, por representar al demandante en el recurso de injunction;

$4,000.00, por concepto de transgresiones, intranquilidad e inseguridad personal al no permitir al demandante de (sic) usar y gozar libremente su propiedad y vivir en paz durante los últimos cinco años;

$500.00, por concepto de honorarios de abogado.

En apelación, el demandado señala la comisión de cuatro errores por el tribunal de instancia:— 1) al declarar sin lugar la defensa de cosa juzgada; 2) al conceder una partida por concepto de honorarios de abogado pagados por el demandante a su abogado en el recurso de injunction; 3) al conceder una indemnización excesiva, irrazonable y arbitraria; y, 4) al dictar una sentencia que es contraria a los hechos y a la ley.

## I

Uno de los aspectos más conocidos de la aplicación de la defensa de cosa juzgada es el que se refiere al fraccionamiento por una parte de sus reclamaciones contra otra persona. Un querellante debe exponer íntegramente su causa de acción en el pleito que radica. De no hacerlo así, no puede permitírsele luego que inicie una nueva acción por la parte que no incluyó, ya que la sentencia que pueda haberse dictado en el primer pleito es concluyente no sólo en cuanto a lo que efectivamente se litigó, sino también en cuanto a todas las reclamaciones que pudieron haberse determinado dentro del mismo. Frecuentemente hemos aplicado esta modalidad de la cosa juzgada. *Miller* v. *Cía. Ron Carioca*, 71

D.P.R. 707 (1950) (entrega de maquinaria y daños por incautación ilegal); *Avellanet* v. *Porto Rican Express Co.*, 64 D.P.R. 693, 700 (1945) (varios incumplimientos de contratos de servicios personales); *Sucn. Rivera* v. *Lugo*, 63 D.P.R. 14 (1944); *Laloma* v. *Fernández*, 61 D.P.R. 569 (1943); *Encarnación* v. *Maeso*, 48 D.P.R. 480 (1935) (resción de contrato y daños); cf. *Blanco* v. *La Capital*, 77 D.P.R. 642 (1954) y *Capó* v. *A. Hartman & Cía.*, 57 D.P.R. 196 (1940).

¿Es aplicable esta norma a aquellas situaciones en que una parte presenta una petición de injunction, obtiene sentencia favorable, y luego insta una acción por los daños sufridos, incluyendo aquellos que se le causaron con anterioridad a y durante la tramitación del recurso de injunction? La jurisprudencia americana no es unánime sobre el particular. Durante el primer cuarto del siglo la tendencia fue a sostener que la sentencia en el pleito de injunction no podía invocarse como cosa juzgada para derrotar la reclamación posterior de daños, aunque siempre hubo manifestaciones aisladas en sentido contrario. *Decree granting injunction as bar to action at law for past damages on account of thing enjoined*, 14 A.L.R. 543 (1921). Sin embargo, con los cambios fundamentales operados en el procedimiento, y el destierro en la jurisdicción federal de la distinción entre las acciones en equidad y las acciones en ley, se ha manifestado una inclinación de mayoría para sostener que la sentencia en la acción de injunction es concluyente en cuanto a todo lo que se litigó en la misma, así como en cuanto a todo lo que pudo haberse litigado, incluyendo los daños causados antes de la iniciación y durante la sustanciación del injunction. *Decree granting or refusing injunction as res judicata in action for damages in relation to matter which injunction was asked in first suit*, 26 A.L.R.2d 446 (1952). En *Restatement, Judgments*, sec. 66 (*a*), in fine, págs. 283–284 se expone que la regla general prevaleciente en aquellos estados en los cuales han desaparecido las diferencias entre remedios en ley y remedios en

equidad, es al efecto de que el demandante está obligado a reclamar dentro del remedio equitativo—injunction—los daños a que tenga derecho causados por las actuaciones del demandado que se intenta restringir, y que si así no lo hiciere, está impedido de iniciar una acción posterior para recobrarlos.

Independientemente de lo arriba expuesto, la mayoría de los casos que niegan la defensa de cosa juzgada en la situación apuntada discuten si la alegación de los daños era esencial o una de las bases esenciales para el éxito de la petición de injunction, y específicamente, si la evidencia aducida en el primer pleito hubiese sido suficiente para justificar una condena en daños, unida a prueba sobre su cuantía. En otras palabras, jugaba un papel muy importante *la identidad de los daños reclamados*. *Kelliher* v. *Stone & Webster, Inc.*, 75 F.2d 331 (C.C.A. 5, 1935).

Examinemos brevemente las expresiones de la jurisprudencia americana sobre el particular, con especial énfasis en los hechos envueltos en cada caso. En *Wischmann* v. *Reikes*, 97 N.W.2d 551 (Neb. 1959) un agricultor obtuvo un injunction para impedir que el dueño de un predio colindante represara o alumbrara artificialmente unas aguas que discurrían por ambos predios, ya que el nuevo desagüe le inundaba parte de sus tierras y le impedía el cultivo de las mismas. Obtuvo un auto de injunction, y aunque en la petición *no* alegó daños, el tribunal en un pleito posterior le negó compensación por los daños sufridos hasta la sentencia del caso original, por entender que la reclamación ha debido ser formulada conjuntamente con la solicitud del injunction. Cf. *Brchan* v. *Crete Mills*, 52 N.W.2d 333, 339 (Neb. 1952). Véase, un comentario sobre el caso de *Wischmann* en *Effect of Suit for Injunction on Subsequent Suit for Damages*, 39 Neb. L. Rev. 441 (1960). En *Olmstead* v. *Rosedale Building & Supply*, 313 S.W.2d 235 (Ark. 1958) se recurrió al injunction para impedir que la corporación demandada violase un convenio de abstenerse de competir en la venta de materiales

de construcción en determinada área. Aun cuando se expidió el auto, se resolvió que el promovente no podía recuperar los beneficios que dejó de percibir durante el período anterior a la sentencia, ya que debió reclamarlos dentro del procedimiento original. En *Robin Sportswear, Inc.* v. *Granmore Realty Corp.*, 145 N.Y.S.2d 636 (1955) se permitió enmendar una petición de injunction para incorporarle una alegación sobre daños sufridos hasta el acto del juicio, ya que según el tribunal, si no se autorizaba, el perjudicado no podría recobrarlos luego en una acción posterior. Y en *Maflo Holding Corp.* v. *S. J. Blume, Inc.*, 127 N.E.2d 558 (N. Y. 1955) el arrendador de un inmueble recurrió al injunction para evitar que uno de sus inquilinos le impidiera la entrada al local arrendado, pero se sostuvo, citando con aprobación *Inderlied* v. *Whaley*, 50 N.E. 1118 (1898), en una acción en reclamación de los daños sufridos, que el casero no podía recobrar si no los había incluido en su petición original. En *Orloff* v. *Hollywood Turf Club*, 242 P.2d 660 (Cal. 1952) se trataba de un apostador que había sido excluido de asistir a las carreras de caballos que se celebraban en dos hipódromos de California. Se le negó el derecho a reclamar daños que se refirieran a cualquier período anterior a un recurso de injunction que entabló para lograr entrada a dicho espectáculo. En *Crawford* v. *Baker*, 72 S.E.2d 790 (Ga. 1952) se obtuvo un injunction para impedir el quebrantamiento de un contrato, y luego, se resolvió que el demandante no podía obtener resarcimiento de los daños que hubiese sufrido con motivo del incumplimiento y que fueron de fecha anterior a la sentencia. En uno de los primeros casos en que se sostuvo la defensa de cosa juzgada, *Gilbert* v. *Boak Fish Co.*, 90 N.W. 767 (Minn. 1902), se recurrió al remedio de injunction para hacer desaparecer un estorbo privado que consistía en un establecimiento para venta de pescado que despedía malos olores, situado al lado de un hotel. El tribunal no accedió a compensar por los beneficios dejados de percibir por el

hotel que correspondieran a cualquier período anterior a la primera gestión judicial. Véanse además, *Currier* v. *Perry*, 44 P.2d 184 (Wash. 1935); *Schmidt* v. *Weyell*, 113 N.Y.S. 630 (1908); *Holbrook* v. *Griffis*, 103 N.W. 479 (Iowa 1905).

En otras situaciones los tribunales han sostenido que la defensa de *res judicata* no puede oponerse contra la reclamación de daños existentes a la fecha de la sentencia en el pleito de injunction. En *Mathews* v. *Jackson Electric Membership Corp.*, 99 S.E.2d 556 (Ga. 1957) la parte demandante obtuvo una orden contra la corporación demandada para que se obligara a ésta a proporcionarle servicio de electricidad. Posteriormente, se permitió prueba sobre, y se concedió compensación por, daños ocasionados antes de la fecha de la orden. Se dijo que bajo las circunstancias envueltas el demandante hubiese tenido derecho al servicio que solicitaba, independientemente de la alegación sobre daños sufridos. Por el mismo razonamiento, en *Bush* v. *City of Laurel*, 105 So.2d 562 (Miss. 1958) se resolvió que podían reclamarse daños en una acción independiente, aun después de haberse obtenido un interdicto prohibiendo al querellado impugnar el título de la demandante sobre determinada parcela.(¹) Véanse además, *Ledingham* v. *Farmers Irrigation District*, 281 N.W.20 (Neb. 1938); *Norwood* v. *Eastern Oregon Land Co.*, 7 P.2d 996 (Ore. 1932); *Louisville Gas Co.* v. *Kentucky Heating Co.*, 111 S.W. 374 (Ky. 1908) y *Perdue* v. *Ward*, 106 S.E. 874 (W. Va. 1921).(²)

Hace apenas unos días indicamos en *Bolker* v. *Tribunal*, ante, pág. 816 (1961) que la excepción de *res judicata* se dirige, entre otras cosas, a evitar que se eternicen las con-

---

(¹) Nuestra regla local permite la reclamación de frutos producidos o podidos producir después de tener éxito en una acción reivindicatoria; *Capó* v. *A. Hartman & Cía.*, 57 D.P.R. 196 (1940), y en una acción independiente instada luego de obtener sentencia en un pleito sobre privación ilegal de una propiedad inmueble, *Blanco* v. *La Capital*, 77 D.P.R. 642 (1954).

(²) El caso de *Perdue* fue modificado en *Smith* v. *Haymond*, 64 S.E.2d 105 (W. Va. 1951).

troversias judiciales. Debemos añadir que cumple también el propósito de evitar molestias continuas a una parte con la radicación sucesiva de varios pleitos relacionados con el mismo asunto. Esto es especialmente conveniente en jurisdicciones como la nuestra que acusan una grave congestión en la labor judicial debido al gran número de litigios. El mismo asunto que consideramos ha estado en dos ocasiones anteriores ante este Tribunal. Esperamos que en esta tercera ocasión los derechos de las partes estén claramente fijados y se haga innecesaria toda ulterior gestión judicial.

Considerados todos los factores que hemos apuntado, y especialmente el desarrollo de nuestro sistema procesal civil que se encuentra a la vanguardia en cuanto al propósito de dispensar justicia rápida, y que localmente no impera la división entre las acciones en ley y las acciones en equidad, establecemos como norma local que la regla de fraccionamiento de las causas de acción impide a un demandante reclamar en un pleito posterior por daños que existían y se causaron mientras se tramitaba un recurso de injunction para impedir o prohibir precisamente la continuación de los actos y actividades generadoras de los daños. Creemos, sin embargo, que la aplicación debe limitarse a aquellos daños que hubiesen podido *reclamarse* y *probarse* dentro del recurso de injunction. Nos parece más justo adoptar como límite de exclusión la fecha de la vista del injunction, y no la de la sentencia final, como parece preferirse en Estados Unidos.

Aplicando la norma adoptada a los hechos del presente caso, resultaría que el demandante sólo puede recobrar los daños que se le causaron a partir de la fecha de la vista de la petición de injunction—última oportunidad que tuvo expedita para la reclamación de los daños anteriores. Deseamos indicar además que aún bajo el fundamento de la regla que permite recobrar todos los daños, llegaríamos a una conclusión parecida, ya que en este caso la alegación de que el demandante estaba sufriendo daños era una de las esenciales

para el éxito de su recurso de injunction. Así lo entendió precisamente este Tribunal en el recurso de apelación interpuesto contra la sentencia que concedió el injunction al resolver, ante un ataque de insuficiencia de las alegaciones, que "en la demanda no hay que alegar específica y expresamente, con palabras exactas, que el demandante sufriría daños irreparables". *Cruz* v. *Ortiz*, supra, a la pág. 326. Se concederán, pues, los daños sufridos a partir de la fecha de la vista ante el tribunal de instancia del recurso de injunction, o sea, desde el 15 de marzo de 1951. (³)

■■ La partida de $500, satisfecha al Lic. César Andreu Ribas por concepto de compensación por los servicios profesionales que le prestó al demandante Cruz en el pleito de injunction no es un elemento de daños que pueda recobrarse dentro de la presente acción. Aun cuando dicha cantidad fue efectivamente pagada, y es además muy razonable en cuanto se refiere a su cuantía, si el demandante creía que tenía derecho a recibir honorarios de abogado en el procedimiento de injunction, venía obligado a tratar de recobrarlos en el referido pleito. El tribunal que entendió en dicha acción no impuso el pago de honorarios de abogado porque evidentemente creyó que la parte demandada no había incurrido en temeridad. El demandante Cruz no apeló entonces de este pronunciamiento, que forma parte de una sentencia firme. No puede ahora relitigar esta cuestión. *Blanco* v. *La Capital*, 77 D.P.R. 642, 646 (1954); *Vélez* v. *General Motors Corporation*, 59 D.P.R. 584, 588–589 (1941); cf. *Gutiérrez* v. *Ginorio*, 58 D.P.R. 428 (1941). *Avalo* v. *Cacho, hoy su Sucesión*, 73 D.P.R. 286 (1952) presenta una situación de hechos distinta, ya que se trataba en una acción de daños por embargo ilegal de recobrar, como elemento de compensación, la suma gastada por el demandante para lograr el levantamiento

---

(³) Con excepción de diferencias sin importancia, los daños reclamados en la presente acción surgen de los mismos hechos que dieron margen a la presentación del interdicto. Compárense las alegaciones según las hemos reseñado al principio de esta opinión.

del embargo. Véanse además, *R. Muñiz de León & Co.* v. *Melón Hnos. & Co.*, 56 D.P.R. 330 (1940) ; *San Juan Racing & Sporting Club* v. *Castro,* 38 D.P.R. 335 (1928) y *Burgos Macías* v. *Esteves,* 38 D.P.R. 443 (1928) ; *Expense of litigation, other than taxable costs, as basis of separate action against party to former suit,* 39 A.L.R. 1218 (1925) ; *American Fire Protection Service* v. *Williams,* 340 P.2d 644 (Cal. 1959) ; *Ritter* v. *Ritter,* 46 N.E.2d 41 (Ill. 1943) ; cf. *Right to recover as damages attorneys fees' incurred in earlier litigation with a third person because of involvement therein through a tortious act of present adversary,* 41 A.L.R.2d 1183 (1956) ; *Harry's Thrifty Tavern* v. *Pitarra,* 166 A.2d 908 (Md. 1961) ; *Hiss* v. *Friedberg,* 112 S.E.2d 871 (Va. 1960).

## III

Los otros errores apuntados—que la sentencia es contraria a la prueba, y que la indemnización concedida era excesiva—sólo necesitan breve consideración.   La prueba justificó plenamente la existencia de daños, especialmente si consideramos las observaciones que hizo el juez de instancia en el acto de la inspección ocular efectuada en 12 de julio de 1955, o sea, cuando ya habían transcurrido cerca de 30 meses de haberse confirmado la sentencia que ordenó la expedición del injunction.

*Por los fundamentos expuestos se modificará la sentencia apelada en el sentido de eliminar la partida de $500 por honorarios pagados al Lic. Andreu en el pleito de injunction, y se reduce a $2,000 el importe de los daños por las transgresiones, intranquilidad e inseguridad sufridas por el demandante.*(⁴)   *Así modificada, se confirma.*

---

(⁴) Hemos examinado la transcripción de evidencia y, aunque en forma vaga e imprecisa, la prueba sostiene que las partidas de $125, por gastos incurridos en la reparación de un garaje, y $150, por gastos incurridos en el cambio de una tubería negra para evitar filtraciones de aguas pestilentes, se pagaron durante el año 1953 (T. E., págs. 30, 32 y 33), y por tanto, después de la fecha de la vista del recurso de injunction. Sin embargo, en la transcripción de las incidencias de una conferencia preliminar efectuada en el pleito de injunction (pág. 16), se hace referencia

Los Jueces Asociados Sres. Belaval y Santana Becerra no intervinieron.

.a la obra que tuvo que realizar el demandado para tapar la tubería negra. No obstante, como esta transcripción no forma parte de los autos del presente caso, nos abstendremos de alterar la conclusión del tribunal de instancia, que es correcta a la luz de la evidencia que consideró.